Thomas B. BRADSHAW

v.

ST. PAUL FIRE & MARINE INSUR-
ANCE COMPANY.

Thomas B. BRADSHAW, as Administra-
tor of Nellie Kate Bradshaw

v.

ST. PAUL FIRE & MARINE INSUR-
ANCE COMPANY.

Civ. A. Nos. 7915, 7916.

United States District Court
N. D. Georgia,
Atlanta Division.

Feb. 12, 1964.

As Amended Feb. 19, 1964.

**570**

Heyman, Abram, Young, Hicks & Maloof, Atlanta, Ga., for plaintiff.

Troutman, Sams, Schroder & Lockerman, Atlanta, Ga., for defendant.

MORGAN, District Judge.

Plaintiffs Thomas B. Bradshaw and Thomas B. Bradshaw, as administrator of the estate of Nellie Kate Bradshaw, have obtained judgments in the DeKalb County Superior Court against Victor Herbert Mullennix, who is a named insured in an automobile liability policy issued by the defendant St. Paul Fire & Marine Insurance Company, hereinafter referred to as St. Paul. Defendant's policy expressly provides that any person or the legal representative thereof who has secured a judgment against the insured shall thereafter be entitled to recover under St. Paul's policy to the extent of the insurance afforded thereby. Plaintiffs' judgments result from a collision between plaintiff Bradshaw's automobile and a non-owned automobile which was then being operated by the

named insured Mullennix at the time when the St. Paul policy was in full force and effect. St. Paul's policy had been issued to Mullennix for the coverage of two automobiles owned by his family, and the policy further provided coverage of any "non-owned automobile".

The defendant, in its answer, sets forth as its defense that it was an "excess insurer" and contends that there were two policies issued by Gulf American Fire and Casualty Company, hereinafter referred to as Gulf American. Defendant claims that the Gulf American policies covered the occurrence and constituted primary insurance. Plaintiffs contend that, under the terms of the policies and the facts and circumstances here involved, St. Paul is liable for the payment of the outstanding balance due on plaintiffs' judgments to the full extent of St. Paul's liability.

In its answer, the defendant also asserted other defenses, but these have been withdrawn.

On January 29, 1964, the above actions, consolidated for trial, came on for trial before the Court without a jury. After receiving stipulations of agreement as to certain facts, evidence presented by one deposition, and the briefs and written arguments of the counsel, the cases are now properly before the Court for determination.

The plaintiffs being residents of the State of Georgia, and the defendant being a non-resident corporation, and the amount in controversy being in excess of $10,000.00, this Court has jurisdiction of the parties to this case by virtue of the provisions of Section 1332, Title 28 United States Code.

At about 12:45 A.M., January 1, 1958 (New Year's Eve) there was a collision between a Cadillac Sedan driven by plaintiff Thomas B. Bradshaw and a 1958 Chevrolet Sports Coupe being driven by Mullennix. The wife of Bradshaw, Mrs. Nellie Kate Bradshaw, was a passenger in the Cadillac.

Both Bradshaw and his wife sustained serious injuries, and Mrs. Bradshaw sub-

sequently died. Prior to the collision, the defendant St. Paul had issued to Mullennix and/or Mrs. Betty York Mullennix an automobile liability policy for the period from February 10, 1957, to February 10, 1958, covering two described automobiles—a 1957 Ford and a 1950 Chevrolet. A copy of this policy is attached to the pleadings. Prior to the occurrence here involved, St. Paul had placed into effect a broader family automobile policy form; the terms of this policy form, which is in evidence, were effective at the time of the occurrence, and the terms of the broader form coverage are applicable.

Mullennix was a salesman employed by Nalley-Chevrolet, Inc., which operated a Chevrolet automobile sales agency in Atlanta, Georgia. The Chevrolet automobile involved in the collision with plaintiff was owned by Nalley-Chevrolet, Inc., and Mullennix was using it at the time of the collision with the owner's consent, but for Mullennix' own convenience and pleasure.

Bradshaw filed suit in the Superior Court of DeKalb County, Georgia, against Nalley-Chevrolet, Inc., and Mullennix, seeking damages in the sum of $387,344.74. The damages sought included physical injuries, disfigurement, pain and suffering, and medical expenses incurred by Bradshaw in his own behalf; property damage to Bradshaw's car; and medical, hospital, nursing, funeral and burial expenses, and loss of consortium because of injuries sustained by Bradshaw's wife as a result of the collision.

Thomas B. Bradshaw, as administrator of the estate of his deceased wife, Nellie Kate Bradshaw, filed suit in the Superior Court of DeKalb County, Georgia, asking damages in the sum of $250,000.00 for the physical injuries, and pain and suffering of his wife, resulting from the negligent operation of the 1958 Chevrolet driven by Mullennix. This action was filed against both Mullennix and Nalley-Chevrolet, Inc.

A third suit was filed by Bradshaw and his children seeking damages in the sum of $75,000.00 for the wrongful death of Mrs. Bradshaw.

At the time of said collision, Mullennix was a named insured in an automobile liability policy issued by defendant St. Paul Fire and Marine Insurance Company, being Policy No. 210AAC599. Said policy, by endorsement, contained liability limits with respect to personal injury of $25,000.00 for each person and $50,000.00 for each accident. Prior to the time of the collision referred to herein, St. Paul had placed into operation in the State of Georgia a broader family automobile policy form, No. 11993. The policy form used in issuing said Policy No. 210AAC599 was the old form policy. Mullennix was qualified to receive the broader family automobile coverage, and said Policy No. 210AAC599 shall be interpreted as having been written on said Form 11993.

The St. Paul policy further provides (under Coverage A and B) that the insurer will defend any suit alleging bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent. The St. Paul policy further provides that the insurer will pay on behalf of the insured sums which the insured shall become legally obligated to pay because of bodily injury or property damage arising out of the ownership, maintenance, or use of the owned automobile, *or any non-owned automobile*. (Italics supplied.) St. Paul does not claim exemption under any exclusion. It is clear that St. Paul's policy obligates it, to the extent of its liability limits, to pay the judgments obtained in the present case, unless St. Paul is relieved of this responsibility because of its "Other Insurance" clause.

Promptly after the two suits were filed in DeKalb Superior Court by Bradshaw, Mullennix furnished St. Paul copies of the petitions served upon him, and called upon St. Paul to defend these cases and to pay, within the limits of St. Paul's liability, any judgment which might be rendered against him in the cases, and

he asked that this letter serve as an avouchment so as to bind St. Paul as to any judgments that might be recovered against him in the two cases. St. Paul returned the service copies of the suits and declined to defend the cases on Mullennix' behalf. Thereafter, St. Paul refused to defend Mullennix in either case or to participate in the defense of said cases.

Prior to the collision on January 1, 1958, Gulf American had issued to Nalley-Chevrolet, Inc., two policies of insurance, both of which were in effect at the time of the collision. Both policies were introduced into evidence. One policy, Gulf American No. 30–1038, was a combination automobile policy issued by Gulf American to Nalley, covering Nalley demonstrators and referring to a schedule on which are listed the automobiles and drivers covered. The schedule originally attached to this policy (Gulf Policy No. 1) did not list Mullennix or the car driven by him. The bodily injury liability limits of this policy were $25,000.00 per person and $50,000.00 per occurrence. Bradshaw contends that the demonstrator policy is not applicable to this loss because Mullennix and the car he was driving were not covered, while St. Paul contends that Gulf American, Bradshaw and Mullennix entered into a settlement agreement which agreement recognized that Gulf Policy No. 1 was applicable and that Bradshaw is bound by this settlement agreement.

The other policy, No. 10–7025, which was a multiple coverage policy (hereafter referred to as Gulf Policy No. 2) issued by Gulf American to Nalley and others, in the absence of Paragraph 11 of the General Conditions relating to "Other Insurance", would have clearly covered the collision here involved. The first insuring agreement in this policy is in the nature of a comprehensive general and automobile liability policy with a limit of liability for bodily injury of $100,000.00 for each person, $300,000.00 for each occurrence, and for property damage liability of $25,000.00 for each accident. Gulf Policy No. 2 named Nalley-Chevrolet, Inc., as the insured, and granted insurance by reason of liability arising from any cause. Gulf Policy No. 2 likewise contained an "Other Insurance" clause.

Gulf American did extend a defense with respect to the suits resulting from the collision as to Nalley-Chevrolet, Inc., and also agreed to extend an accommodation defense to Mullennix in the event St. Paul refused to defend him, but with full reservation of rights and without prejudice to Gulf American as to any position it desired to take in the future.

The case filed by plaintiff Bradshaw came on for trial before a judge and jury. After the evidence in the case was closed, Nalley-Chevrolet, Inc., made a motion for a directed verdict in its behalf, which motion was overruled, and the jury thereafter returned a verdict against Nalley-Chevrolet, Inc., and Mullennix in the sum of $121,500.00. Judgment was entered thereon on October 27, 1961. Thereafter, Nalley-Chevrolet, Inc., filed a motion for a judgment notwithstanding the verdict, and Mullennix filed a motion for a new trial.

The two remaining cases appeared on the trial calendar of the DeKalb Superior Court. Negotiations seeking disposition of the cases were instituted. St. Paul refused to participate in the negotiations; however, certain agreements which are in evidence were signed by other parties. Plaintiff contends that these agreements merely recited Gulf American's willingness to make substantial payments with respect to the collision, and takes the position that St. Paul was a primary insurer as to Mullennix and that Gulf American was only an excess insurer; that St. Paul should first pay $50,000.00 on the judgment in favor of Bradshaw, and that Gulf American should contribute only the balance of $71,500.00. Plaintiff contends that Gulf American agreed to pay Bradshaw the $71,500.00 in consideration of Bradshaw's agreement not to further enforce his judgment against Gulf American, and to protect Gulf American against further claims on account of this judgment. Plaintiff con-

tends that this agreement did not constitute a settlement or release as to Mullennix, and that plaintiff Bradshaw reserved the right to proceed against Mullennix and St. Paul for the balance due. Other agreements called for payment by Gulf American of $38,500.00 on any judgment in the wrongful death action.

On February 20, 1962, the date these agreements were signed, there was a hearing on the motion for judgment notwithstanding the verdict filed by Nalley-Chevrolet, Inc., and the motion for a new trial filed by Mullennix, and the trial judge in the State Court entered an order reciting that the uncontradicted evidence adduced on the trial of the case showed that the accident in question occurred after midnight on the morning of January 1, 1958, and that the defendant Mullennix had been in attendance at a social gathering during the course of the evening immediately preceding said accident; and that, therefore, the Court finds as a matter of law that the defendant Mullennix was not acting within the scope of his employment for the defendant Nalley-Chevrolet, Inc., at the time the accident occurred, and it was, therefore, adjudged that judgment be entered in favor of the defendant Nalley-Chevrolet, Inc., and that judgment entered on the 27th day of October, 1961, against Nalley-Chevrolet, Inc., be vacated and set aside. The motion for a new trial filed by Mullennix was overruled, and the judgment against Mullennix was declared to be in full force and effect. No appeal was entered from this order of the State Court.

The case brought by Bradshaw, as administrator of his deceased wife's estate, came on for trial on February 20, 1962, at which time Nalley-Chevrolet, Inc., was dismissed as a party defendant, and the jury returned a verdict in favor of the plaintiff and against Mullennix in the sum of $25,000.00. Judgment was therefore entered in accordance with said verdict.

On February 20, 1962, fi. fas. were issued in each of the two foregoing cases against Mullennix and the amounts adjudged to be due by him. The fi. fa. issued in the case brought by Bradshaw individually bears interest from October 27, 1961, and that issued in the case filed by Bradshaw, as administrator, bears interest from the date of February 20, 1962.

On February 20, 1962, $71,500.00 was paid by Gulf American as a credit on $121,500.00 judgment against Mullennix, leaving an unpaid balance of $50,000.00 plus interest.

The $25,000.00 judgment rendered in favor of Bradshaw, as administrator, remains unpaid.

Judgment was also taken February 20, 1962, in the wrongful death action in the sum of $38,500.00, but this judgment was paid in full by Gulf American.

The judgments against Mullennix as a result of the collision were in the amounts of $121,500.00, $25,000.00, and $38,500.00—a total of $185,000.00. Gulf American has paid $110,000.00. There is still due to plaintiffs a total of $75,000.00 upon these judgments. St. Paul, as liability insurer of Mullennix, has refused payment of any amount under its policy.

The plaintiffs have the burden of proving the case as made by their petitions. The facts clearly show that each plaintiff is a judgment creditor against Mullennix; that their judgments were obtained as a result of injuries received by plaintiff Bradshaw and his wife as the result of a collision with a non-owned automobile being negligently operated by Mullennix; that, at the time of the collision, Mullennix was a named insured in a policy issued by the defendant St. Paul, under the terms of which St. Paul had agreed to pay on behalf of Mullennix all sums for which Mullennix should become legally obligated to pay as damages because of bodily injury and property damage sustained by any persons arising out of the use of any non-owned automobile, and that St. Paul should defend any suit growing out of such circumstances. It is stipulated that the insured has fully complied with all the terms under the

policy. Plaintiffs have proved the facts necessary to make a prima facie case in their favor.

■■■ While in its answers the defendant relied upon an exclusion providing that the policy does not apply to a non-owned automobile while used in the automobile business, this defense was withdrawn. Defendant now relies upon the "Other Insurance" clause contained in this policy. Defendant has the burden of establishing this defense. It is well established under Georgia law that the insurer has the burden of proving the applicability of an exclusion or exception contained in its policy of insurance. See Loftin v. United States Fire Insurance Company, 106 Ga.App. 287, 294, 127 S.E. 2d 53.

While no issue is made by the defendant, it is appropriate to note that the defendant was duly notified of the suits filed as a result of the collision, and that it refused to defend the insured Bradshaw. It subsequently refused to join in negotiations seeking disposition of the cases. Its policy obligated it to defend the cases even though the suits might have contained allegations which, if true, might have justified a contention that the automobile was being used under circumstances coming within a policy exclusion. See Loftin v. United States Fire Insurance Company, supra.

■■ Under Georgia law, if an insurer wrongfully refuses to defend, the insured may proceed to handle its own defense and may settle the case against the insured, and if such settlement is in good faith, the insurer is bound by it and is obligated to reimburse the insured within the limits of the insurance policy. See Rutledge v. Dixie Automobile Insurance Company, 106 Ga.App. 577, 579, 127 S.E. 2d 683.

The defendant, however, contends that it is an "excess insurance carrier" with respect to these cases and refers to the two insurance contracts issued by Gulf American Fire and Casualty Company to Nalley-Chevrolet, Inc., being Gulf Policy No. 1, covering specifically named individuals and cars, and Gulf Policy No. 2, a multiple coverage policy.

Paragraph (C) of the Stipulation of Issues in this case refers to three policies. One of these is the Gulf American Policy No. 1.

There is a dispute between the parties to the case as to whether Gulf American Policy No. 1 offered any coverage to Mullennix. If Policy No. 1 is not applicable to the cases under consideration, then there was no primary coverage afforded by any of the policies to this collision. Gulf Policy No. 1 is attached to the Supplement to Stipulation of Facts and Documents. Reference to the policy itself will show that this policy was issued with respect to scheduled individuals and automobiles. Examination of the schedule attached to the policy shows that Mullennix was not one of the individuals protected by the policy. Paragraph (2) of the supplemental stipulation expressly recites that the 1958 Chevrolet involved in the collision was not one of the automobiles listed in the schedule, nor was it purchased to replace any of the automobiles listed therein. The 1958 Chevrolet was a new automobile acquired by Nalley-Chevrolet, Inc., on December 31, 1957. There is no evidence that it was a temporary substitute for any described automobile, temporarily withdrawn from normal use because of breakdown, repair, servicing or destruction.

Under the terms of the policy, it seems clear that Gulf Policy No. 1 did not afford Mullennix protection for the collision out of which the Bradshaw suits arose.

■■■ Defendant St. Paul, however, contends that Gulf Policy No. 1 is applicable because of alleged recognition by Gulf American. It contends that Gulf Policy No. 1 is applicable to the losses and judgment, even though the terms of the policy afforded no coverage, inasmuch as Gulf American has recognized said policies as being applicable thereto. There is nothing in the facts stipulated or in the evidence produced at this hearing which would justify this contention on behalf of the defendant. The Georgia

law requires contracts of insurance to be in writing. The terms and conditions, including the coverage afforded by the policy, must be found in the written language used by the policy. Gulf Policy No. 1 contains an express provision that its terms cannot be waived or changed, except by endorsement issued to form a part of the policy. See Georgia Casualty & Surety Company v. Hardrick, 211 Ga. 709, 712, 88 S.E.2d 394.

The evidence does contain an indication of a proposal that Mullennix and the 1958 Chevrolet driven by him be included under Gulf Policy No. 1. This request, however, was made after the collision had occurred. The request was rejected and the Company expressly refused to issue such an endorsement.

The testimony of Ford Rutherford was taken by depositions on January 18, 1964. Rutherford was Claims Manager of Gulf American. He was first employed in that capacity on June 1, 1958, and continued in this capacity with the Company until January 3, 1964. While Rutherford was not with Gulf American when the Bradshaw suits were filed, he entered the picture six months later and had the benefit of his Company's file and the actual handling of the cases from June 1, 1958, until the disposition of the cases by Gulf American on February 20, 1962. He states categorically that Gulf American fully realized that Gulf Policy No. 1 afforded no coverage in the matter; that he had no knowledge of any arrangement made with anyone under which Gulf American was to be liable beyond the express terms of its policies; and that he had no knowledge of any admission of liability or recognition of liability with respect to Gulf Policy No. 1.

Defendant contends, with respect to Gulf Policy No. 1, that the drafts used by Gulf American in making its payments on account of the Bradshaw judgments and the settlement thereunder carried the number 30–1038. The evidence shows that this entry was made for statistical purposes and was erroneously made. These drafts were paid under the agreement dated February 20, 1962.

These agreements were executed by the parties for the purpose of disposing of Gulf American's liability with respect to the losses sustained. They were in the nature of covenants not to sue. These drafts did not release the claims against Mullennix or his insurer, St. Paul. The agreements did refer to two policies. Gulf American had actually issued two policies to Nalley-Chevrolet, Inc., as named insured, which were in effect on the date of the collision. Rutherford, however, explained that these agreements referred to the two policies to be sure that the agreements would be all embracive, to avoid any future expenses litigation-wise, and to eliminate any issue whatsoever insofar as Gulf American was concerned.

The agreements issued on February 20, 1962, by referring to the two policies issued by Gulf American to Nalley-Chevrolet, Inc., contain a recital that these policies furnished protection only "under the conditions stipulated in said policies". *There is nothing in the agreements which could be construed as an admission by Gulf American of liability going beyond the express provisions of its insuring agreements.*

The agreement of February 20, 1962, being the agreement with Bradshaw relating to Bradshaw's judgment, also expressly repudiates any liability on the part of Gulf American beyond that of an "excess insurer". This contention on the part of Gulf American is clearly predicated on the terms of its multiple coverage policy.

The argument of St. Paul regarding Gulf American Company's file carrying the Policy No. 30–1038 (Gulf Policy No. 1) has no merit. The reason for the original file bearing this number was satisfactorily explained by the evidence.

It also clearly appears from the record that Gulf American's reinsurance carrier, General Reinsurance Corporation, paid its loss under the multiple coverage policy, Gulf Policy No. 2.

For the reasons stated above, Gulf Policy No. 1 offered no coverage

and was not applicable as to the Bradshaw judgments. There being no primary coverage by any policy, this Court now must consider the provisions of the other policy issued by Gulf American to Nalley-Chevrolet, Inc., being Gulf Policy No. 2, a multiple coverage policy. This insuring agreement provides comprehensive and liability coverage in respect to automobiles owned by Nalley-Chevrolet, Inc. Its bodily injury limits were $100,000.00 per person and $300,000.00 per occurrence. This multiple coverage policy contained a number of general conditions of which Number 11 of said policy is entitled "Other Insurance". This provision provides for non-coverage except as excess in the event that there is other insurance applicable to the loss, and reads as follows:

> "Other Insurance—No Insuring Agreement hereof shall apply to any loss if the Insured is, or would be but for the existence of such Insuring Agreement, insured against such loss under any other policy or policies, bond or bonds, except as respects any excess beyond the amount which would have been payable under any other such policy or policies, bond or bonds, had such Insuring Agreement not been effective."

The "Other Insurance" provision of defendant St. Paul's Policy No. 210AAC599, issued to Mullennix, reads as follows:

> "If the Insured has other insurance against a loss covered by Part I of this Policy the Company shall not be liable under this Policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss, provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

Policy limits of St. Paul's policy issued to Bradshaw were $25,000.00 per person and $50,000.00 per occurrence.

█ The defendant St. Paul further contends that, under the Gulf Policy No. 2 issued to Nalley-Chevrolet, Inc., all the coverage under such policy is primary. Bradshaw, on the other hand, contends that the Gulf American liability was secondary and that St. Paul was the primary insurer. St. Paul attempts to stand on its "Other Insurance" clause in its policy, and plaintiffs attempt to stand on the "Other Insurance" clause in the Gulf American Policy No. 2. Although the "excess provisions" in the Gulf American and St. Paul policies are written in different language, the only difference in effect is that St. Paul's applies only to non-owned or temporary substitute automobiles and, thus, to but a part of its coverage, while the Gulf American applies to all of its coverage. As is pointed out, aside from this feature, however, there is no real difference in the two clauses. Each "excess provision", within the scope of its coverage, is intended to accomplish the same result, which is to make that coverage excess over other applicable insurance. The "Other Insurance" provisions of the St. Paul policy and the Gulf American multiple coverage policy are mutually repugnant. Both policies in question provide that if there be other insurance, each shall be responsible only for excess over any other valid and collectible insurance. This Court holds that the "excess" clauses are ineffective and that both the defendant St. Paul and Gulf American, under Policy No. 2, were primarily liable to Bradshaw. See Factory Mutual Liability Insurance Company of America v. Continental Casualty Company, 267 F.2d 818 (5 Cir., 1959); Continental Casualty Company v. St. Paul Mercury Fire and Marine Insurance Company, D.C., 163 F.Supp. 325; American Fidelity & Casualty Company v. St. Paul-Mercury Indemnity Company, 5 Cir., 248 F.2d 509.

Defendant contends that, under the Erie doctrine (Erie Railroad Company

v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188), the principles set forth by the Georgia Courts in Hartford Steam Boiler Inspection & Insurance Company v. Cochran Oil Mill & Ginnery Company, 26 Ga.App. 288, 105 S.E. 856, control. The factual situation, together with the terms of the policies here under consideration, differ substantially with the Hartford case, and the Hartford case cannot be considered as authority for either party's contention in the case under consideration.

 Since both St. Paul, the defendant, and Gulf American were primarily liable, the next question is in what manner should the liability be enforced. There do not appear to be any cases discussing the proper method of proration under Georgia law. The Fifth Circuit, however, in Factory Mutual Liability Insurance Company of America v. Continental Casualty Company, 267 F.2d 818 (5 Cir., 1959) approved the proration as accomplished in Continental Casualty Company v. St. Paul Mercury Fire and Marine Insurance Company, 163 F.Supp. 325 (S.D.Fla., 1958) where the District Court prorated the loss, using the method set forth in the pro rata provisions of the St. Paul policy. In that case, as here, the opposing policy (Gulf Policy No. 2) contained no proration clause. The St. Paul proration clause in that case was identical to that found here, providing for proration in the proportion that the applicable St. Paul limit of liability bears to the combined applicable limits of both policies. The application of that formula would result in a 5 to 1 ratio (combined applicable limits of $250,000.00 as opposed to the St. Paul limit of $50,000.00) and would result in St. Paul's being liable to the extent of one-fifth of $185,-000.00, or $37,000.00.

 St. Paul, under the terms of its policy, also agreed "to pay in addition to the applicable limits of liability: (a) * * * all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limits of the company's liability thereon". The language of the St. Paul policy in which it agrees to pay "*in addition to the applicable limits of liability * * * all interest on the entire amount of any judgment therein which accrues after the entry of judgment*" (italics supplied) and before the company pays, tenders, or deposits the amount due is clear and unambiguous. St. Paul is obligated to pay all interest for which Mullennix is liable as a result of the rendition of the judgments against him, for it is conceded that St. Paul has not paid or tendered the amount due by it. See the discussion of Judge John R. Brown of the Fifth Circuit in the case of United Services Automobile Association v. Russom, 241 F.2d 296, and also annotations under 76 A.L. R.2d 978.

Under this provision of the St. Paul policy, defendant St. Paul is liable for interest at the rate of 7 percent on the principal sum of $121,500.00 from October 27, 1961, until February 20, 1962; on $50,000.00 from February 20, 1962, until the defendant pays, tenders, or deposits in Court the amount hereby adjudged to be due to the plaintiff Bradshaw, individually. Also, defendant St. Paul is liable to Bradshaw, as administrator, for the amount of interest at the rate of 7 percent due on the principal sum of $25,000.00 from the date of February 20, 1962, until the defendant herein pays or tenders into Court the amount herein adjudged to be due to plaintiff Bradshaw, as administrator.

Let all costs of court herein be adjudged against St. Paul.

This memorandum decision shall be considered as the Findings of Fact and Conclusions of Law herein as authorized by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Let judgment be entered accordingly.