569 F.2d 304
 CAROLINA CASUALTY INSURANCE COMPANY and JRJ Trucking, Inc.,
Plaintiffs-Appellants, Cross-Appellees,
v.
UNDERWRITERS INSURANCE COMPANY, International Transportation
Services, Inc., and International Bakerage, Inc.,
Defendants-Appellees, Cross-Appellants.
 No. 75-3434.
 United States Court of Appeals,
Fifth Circuit.
 March 10, 1978.
 
 Lowell S. Fine, A. Paul Cadenhead, James C. Pratt, Atlanta, Ga., for appellant.
 Edward W. Killorin, Atlanta, Ga., for Underwriters, et al.
 Michael V. Elsberry, Atlanta, Ga., Millard C. Farmer, Jr., Newnan, Ga., for Mrs. L. A. Smith.
 Ben L. Weinberg, Jr., Atlanta, Ga., for Rentco-Division.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before BROWN, Chief Judge, COLEMAN and MORGAN, Circuit Judges.
 BROWN, Chief Judge:
 
 
 1
 In this little declaratory drama, neither of two insurance companies wanted to play the part of primary insurer. Nonetheless, the District Court cast them both in that role and they appeal. We affirm.
 
 It Happened One Night
 
 2
 At approximately 10:00 p. m. on February 21, 1973, Amos Williamson was backing a tractor-trailer into the driveway of his home. During this operation, the trailer extended across Georgia State Route 54, and an automobile driven by Kenneth Randall Smith collided with that unsubtle object. Smith was killed; his wife and a second passenger were injured.
 
 
 3
 Shortly thereafter, Mrs. Smith brought a diversity suit in the Northern District of Georgia alleging negligence of the driver Williamson and the defective condition of both tractor and trailer. She sought $1.5 million in damages for her injuries and the wrongful death of her husband. The cast of characters named as defendants and their alleged interrelationships were as follows:
 
 
 4
 J.R.J. Trucking, Inc. (JRJ): owner and lessor of tractor
 
 
 5
 Rentco Division Fruehauf Corp. (Rentco): owner and lessor of trailer
 
 
 6
 International Transportation Services, Inc. (ITS): lessee of tractor and trailer
 
 
 7
 International Bakerage, Inc. (Bakerage): sublessee from ITS of tractor and trailer
 
 
 8
 Williamson was alleged to be the agent of all four defendants.
 
 Behind The Scenes
 
 9
 At the time of the accident, JRJ was the named insured under a policy issued by Carolina Casualty Insurance Company (Carolina). That policy covered both the tractor owned by JRJ and the trailer owned by Rentco. ITS and Bakerage were named insureds under a policy issued by Underwriters Insurance Company (Underwriters). Both policies were in full force and effect on February 21, 1973.
 
 The Director Takes Over
 
 10
 During the pendency of Mrs. Smith's action, Carolina brought a declaratory judgment action against Underwriters, Rentco, ITS, Bakerage, and Mrs. Smith. It sought an adjudication of the respective rights and liabilities of the parties under the Carolina and Underwriters policies and a stay of the Smith action. Like the policies, also central to this dispute was the leasing agreement between JRJ and ITS.[1]
 
 
 11
 Under the terms of this contract, JRJ, owner-lessor of the tractor, undertook, inter alia, the following obligations: (i) to keep the leased equipment in first-class condition and repair and to pay all operating expenses;[2] (ii) to assume responsibility for and pay wages to the drivers;[3] (iii) to assume full responsibility for drivers as JRJ's employees, and to hold ITS-lessee harmless from drivers' claims against ITS;[4] (iv) (a) to provide and keep in force property damage and public liability insurance, (b) to furnish a certificate of insurance showing ITS as the named insured and providing for notice of cancellation, and (c) to assume the expense in the event JRJ was unable to furnish evidence of insurance and ITS procured insurance on behalf of JRJ.[5]
 
 
 12
 ITS, an ICC carrier, assumed as required by applicable regulations[6] exclusive possession, control and use of the leased equipment and full responsibility to the public, shippers, and all state and federal agencies.[7]
 
 
 13
 In order that the reader can more readily understand and compare the critical provisions of the two policies, they are numbered in brackets and set forth below in table form. The provisions will be referred to throughout using these numbers.
 
 
 
 [8]
 ,[9]
 
 
 
 14
 Carolina argued below that its policy did not cover ITS or Williamson.[10] Its fallback position was if such coverage existed, it was excess only and ITS' coverage was primary as a matter of law.[11] Underwriters urged that its policy did not cover Williamson, that JRJ's coverage was primary and extended to both Williamson and ITS. Underwriters further contended that because any liability of ITS was vicarious, it was subrogated to the right of ITS to seek indemnity from Williamson and ultimately Williamson's insurer, Carolina. Alternatively, Underwriters asserted that if any coverage were found to exist, it was excess only and not primary.
 
 
 15
 On cross-motions for summary judgment, the District Court held that (i) ITS was not an additional insured under Carolina's policy by virtue of exclusion (2) of the Truckmen's endorsement; (ii) the driver Williamson was an additional insured under definition (1) of Carolina's policy by virtue of the lease which made Williamson a JRJ employee and permissive user; (iii) Williamson was an additional insured under ITS' Underwriters policy definition (4) by virtue of the lease which made him a permissive user;[12] Underwriters clause (5) was ineffective to exclude him from that definition under Trinity Universal Ins. Co. v. Farmers Mutual Auto. Ins. Co.;[13] (iv) a finding that Williamson was an additional insured under ITS' policy negated any possibility of subrogation and indemnity; and (v) because the "other insurance" provisions (3) and (6) were mutually repugnant, Carolina and Underwriters were primary insurers with respect to Williamson. Delighted not to have been the only one cast in a primary role, but definitely unhappy with equal billing, both companies appeal.[14]
 
 
 16
 That Which They Giveth They Also Taketh Away?
 
 
 17
 Carolina limits its attack to one aspect of the District Court's decision:[15] the implicit rejection[16] of the contention that Underwriter's coverage was not primary as a matter of law. Carolina's theory proceeds along the following lines. ITS is a common carrier certified by the Interstate Commerce Commission and the Georgia Public Service Commission. The rig, in charge of Williamson, was operating under ITS' certificate of authority when the collision occurred. Underwriters filed on behalf of ITS certificates of insurance with the ICC and the Georgia PSC. The Underwriters policy is subject to the "Endorsement for Motor Carrier Policies of Insurance for Automobile Bodily Injury and Property Damage Liability under Section 215 of the Interstate Commerce Act"[17] (ICC endorsement).[18]
 
 
 18
 According to Carolina, the fact that the Underwriters policy does not actually bear the ICC endorsement is of no moment. The Interstate Commerce Act and regulations promulgated pursuant thereto have the effect of stamping the endorsement on the policy, with the concomitant effects of nullifying the "other insurance" clause (6) and making Underwriters the primary insurer. In support of this argument, Carolina relies principally on two Tenth Circuit decisions, Argonaut Ins. Co. v. National Indemnity Co., 10 Cir., 1971, 435 F.2d 718, and Hagans v. Glens Falls Ins. Co., 10 Cir., 1972, 465 F.2d 1249. In rebuttal, Underwriters relies on yet another Tenth Circuit case, Carolina Casualty Ins. Co. v. Transport Indemnity Co., 10 Cir., 1973, 488 F.2d 790. We shall discuss these opinions in chronological sequence.
 
 
 19
 In Argonaut, Executive Car Leasing hired a driver (Blankenship) from Auto Driveaway to transport an Executive car from Oklahoma to California. En route, Blankenship struck a car driven by Seymour who died as a result. Seymour's estate sued Blankenship and Auto Driveaway; Executive Car Leasing was not joined as a defendant. Executive's insurer National refused to defend the action. Driveaway's insurer Argonaut defended, settled for $55,000, paid the judgment, and sued National on the basis that National had primary coverage. Both the National and Argonaut policies contained "other insurance" clauses. The Argonaut policy, however, contained the ICC endorsement, as to which the Court concluded as follows:
 
 
 20
 Blankenship had possession of the car under authority from Driveaway and drove negligently. The ICC endorsement, although not expressly referring to the "other insurance" provisions, says that no condition, provision, stipulation, or limitation of the policy "shall relieve the Company (the insurer) from liability hereunder." If the Argonaut position is accepted, it will be relieved from any liability except for excess coverage. We believe that the effect of the endorsement was to make Argonaut the primary insurer.
 
 
 21
 Whatever may be the liability of National under its policy, we agree with the trial court that " * * * Argonaut cannot escape the plain terms of its insuring agreement in this case." The ICC endorsement imposes primary liability and eliminates any need for consideration of the effect of the identical "other insurance" clauses. We have no question of excess because the recovery was within the limits of the Argonaut policy.
 
 
 22
 435 F.2d at 720-21 (emphasis added).
 
 
 23
 The facts in Hagans were slightly different. There the lessor Ryder (insured by Liberty Mutual) agreed to provide insurance covering Far-Go (lessee/ICC carrier) as an additional insured. Far-Go (insured by Glens Falls) agreed to indemnify Ryder. The driver Hagans was a Far-Go employee on Far-Go business at the time the accident occurred. Both policies covered Far-Go and its employees. Apparently the Glens Falls policy did not contain the ICC endorsement, but "all parties proceed(ed) on the premise that the policy of Glens Falls contain(ed) such." 465 F.2d at 1252. The Court ignored the terms of the lease by which Ryder agreed to provide public liability insurance, and on the basis of Argonaut held that Glens Falls' coverage of Far-Go (lessee) was primary.
 
 
 24
 Carolina v. Transport maps out as follows:
 Carolina/Andico-Lessor Transport/Ringsby-Lessee
 ------------------------------ -------------------------
Lease Lessor agreed to indemnify Lessee assumed control of
provisions lessee driver
 Lessor agreed to supply driver
 who was not to be considered
 employee of lessee
 Lessor agreed to obtain public
 liability insurance
Policy ICC endorsement ICC endorsement
provisions
 Omnibus insurance clause No comparable clause
 Excess only clause Excess only clause
 
 
 25
 On these facts the Court ignored the lease agreement except to the extent that the contract was considered to have established permissive use for purposes of the omnibus insurance clause. It distinguished Argonaut and Hagans on the basis that both policies contained the ICC endorsement and went on to hold first, that Ringsby-lessee[19] and the driver were additional insureds under the Carolina policy. Second, the driver was not an additional insured under the Transport policy because it lacked an omnibus insurance clause (equivalent to Underwriters provision (4) here). Third, the driver was a "special employee" of Ringsby-lessee because it had full control over the tractor-trailer. Finally,
 
 
 26
 Ringsby's (lessee's) liability, if any, is vicarious; if Ringsby should be found liable it would have the right to proceed by indemnification against Freeze (the driver). As Ringsby's subrogee, Transport (Indemnity) could then sue Freeze, a permissive user under Carolina's policy, ultimately recovering against Carolina. Based on the above, and to avoid circuity of action, we hold Carolina's policy to be primary.
 
 
 27
 488 F.2d at 794 (emphasis added).
 
 
 28
 Argonaut, Hagans and Carolina v. Transport are not dispositive here. First, there are factual distinctions. In Argonaut, the estate did not sue Executive Leasing and the negligence action went to judgment only against Driveaway and Blankenship. While the Court clearly recognized the possibility that Executive and National had potential liability, such liability had not been established, and there is no indication in the opinion that an action against Executive was either filed or contemplated. As to Hagans, the Glens Falls policy held to be primary insured a lessee who had expressly agreed to indemnify its lessor. In those circumstances, there was nothing inequitable in making Glens Falls the primary insurer. Carolina v. Transport involved a situation where the lessee's policy contained no omnibus clause.
 
 
 29
 But we approach it more fundamentally. Even if we assume arguendo that the Underwriters policy bears the ICC endorsement, and assume that in this trilogy the Tenth Circuit is saying that such an endorsement makes insurance coverage primary in all circumstances and for all purposes as a matter of law, we decline to follow such a rule.
 
 
 30
 The purpose of § 215 of the Interstate Commerce Act and regulations is to assure to members of the public and shippers that a certificated carrier has independent financial responsibility, with the dollar limits prescribed, to pay for losses created by its carrier operations. On the face of the endorsement this is accomplished by reading out "other insurance," "excess," or similar clauses insofar as the amount available to a third party victim would be reduced. But there is no need for or purpose to be served by this supposed automatic extinguishment of the clause insofar as it affects the insured or other insurers who clamor for part or all of the coverage. Indeed the last sentence of the endorsement (see note 18, supra ) prescribes that as between insurer and insured all terms of the policy are to remain in effect.
 
 
 31
 This is substantially the same approach we took in Consolidated Systems, Inc. v. Allstate Ins. Co., 5 Cir., 1969, 411 F.2d 157. There, Allstate insured Consolidated, the lessor; Citizens insured Alterman, the common carrier/lessee. Despite the fact that certificates of insurance were filed on Alterman's behalf with the ICC and the equivalent state authority, Citizens never issued a policy to Alterman. Allstate argued that Alterman was estopped to deny primary coverage to Consolidated because of the ICC requirements. Judge Thornberry's opinion answered the estoppel argument for us:
 
 
 32
 The question . . . raised by this conclusion of law is whether Citizens' filings with the ICC and the Public Service Commission, either or both, constitute representations of the existence of insurance which estop Citizens from denying primary coverage to Consolidated. Preliminarily, we focus on the fact that the party asserting the estoppel is Allstate, not the person injured in the collision. We make this point because we would clearly have a different case if this were a suit brought by the injured person, if Alterman were judgment proof, if a bond were not on file with the ICC, and if Citizens denied liability to the injured party on the ground that it never issued the insurance policy referred to in the certificate. In this hypothetical situation, the injured person could argue with considerable force that the public relied on the existence of insurance attested to by Citizens and that Citizens was estopped to deny liability since Alterman would never have made the trip resulting in a collision if the certificate had not been filed. But in the case actually before us Allstate is asserting that Citizens is estopped to deny the existence of insurance covering Consolidated. Whereas the Florida citizen injured in a collision with an Alterman vehicle would have little difficulty arguing as against Citizens that the public relied on the representation that Alterman had insurance, reliance by Allstate on other insurance for Consolidated is not so easily perceived.
 
 
 33
 411 F.2d at 161 (emphasis added). See also Allstate Ins. Co. v. Liberty Mutual Ins. Co., 3 Cir., 1966, 368 F.2d 121, 125 (where construction of policy is not required to protect the public, ICC considerations are not determinative). Cf. Wellman v. Liberty Mutual Ins. Co., 8 Cir., 1974, 496 F.2d 131, 139 (ICC regulations may not be read into policy to impose liability upon insurer in contravention of precise terms of policy); Vance Trucking Co. v. Canal Ins. Co., D.S.C., 1966, 249 F.Supp. 33, 39, aff'd, 4 Cir., 1968, 395 F.2d 391, cert. denied, 393 U.S. 845, 89 S.Ct. 129, 21 L.Ed.2d 116 (Interstate Commerce Act and regulations are not designed to excuse a party from liability which he might otherwise have).
 
 
 34
 Therefore, assuming without deciding that the Underwriters policy contains an ICC endorsement,[20] we hold that the endorsement does not make Underwriters the primary insurer as a matter of law. Williamson was a paid employee of JRJ at the time of the accident, and the leasing agreement granted Williamson permissive use of JRJ's equipment. Carolina insured the risk that a JRJ permissive user might incur liability. Carolina cannot disavow its primary insurer status on the theory that public policy demands that this be pushed off onto Underwriters. ICC policy factors are frequently determinative where protection of a member of the public[21] or a shipper is at stake, but those factors cannot be invoked by another insurance company which has contracted to insure a specific risk and which needs no equivalent protection.
 
 Like A Circle In A Spiral
 
 35
 Underwriters takes the same stance here as it did below with one exception: it has apparently abandoned and with good cause the contention that ITS was an additional insured under the Carolina policy.[22] Otherwise, it maintains that under Simmons v. King, 5 Cir., 1973, 478 F.2d 857, ITS' liability for Williamson's acts is vicarious only and that under principles of indemnity and subrogation, it would be entitled to proceed against Williamson and ultimately his insurer Carolina. Thus, in order to avoid circuity of action, we are urged to follow Carolina v. Transport, supra, 488 F.2d 790, and hold Carolina primary.
 
 
 36
 The fallacy in Underwriters' position of course is that Williamson was an additional insured under ITS' policy. We believe that the District Court's analysis of this issue was absolutely correct[23] and that it properly applied Simmons.[24]
 
 
 37
 Underwriters contends that by reason of the terms of the lease imposing substantial obligations on the lessor (see notes 2-5, supra ) Carolina's coverage should be primary. It is well settled that disputes of this sort hinge principally on the express terms of the policy and an insurer's contractual obligations cannot ordinarily be altered by collateral agreements between its insured and third persons. E. g., Transport Indemnity Co. v. Home Indemnity Co., 3 Cir., 1976, 535 F.2d 232, 235; Carolina v. Transport, supra. However, it is equally well settled that a Court can look to outside sources such as lease agreements and ICC regulations to define the status of persons who are covered by the insurance contract. E. g., Wellman, supra, 496 F.2d at 137; Carolina v. Transport, supra, 488 F.2d at 794; Allstate Ins. Co. v. Alterman Transport Lines, Inc., 5 Cir., 1972, 465 F.2d 710, 714-15; Transport v. Home, supra, 535 F.2d at 237; Pacific National Ins. Co. v. Transport Ins. Co., 8 Cir., 1965, 341 F.2d 514, 518. Cf. Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc., 1975, 423 U.S. 28, 40, 96 S.Ct. 229, 235, 46 L.Ed.2d 169, 179 (recognizing that Interstate Commerce Act and regulations can impose liability as a matter of law). And probably more significant, when one insurer lashes out against another insurer with whom there is not the slightest shadow of a suggestion of a contractual relationship on the equitable concept of subrogation, the relationship between the insureds may have decisive consequences.
 
 
 38
 Underwriters insists that provision (5), which excludes an owner of a hired or non-owned automobile or any agent or employee of such owner, operates to exclude Williamson from the omnibus definition (4) as an insured. The District Court properly held that Trinity Universal Ins. Co. v. Farmers Mutual Auto. Ins. Co., 7 Cir., 1962, 309 F.2d 283, is dispositive on this score. The "definition of insured" and "owner-agent" exclusion clauses in Trinity were substantially identical to the equivalent provisions (4) and (5) in the Underwriters policy. Moreover, the Eighth Circuit in Wellman, supra, construed almost identical "definition of insured" and "owner-agent" exclusion clauses in the same fashion as Trinity. 496 F.2d at 136.[25] Under Trinity and Wellman when provisions (4) and (5) are read together, it is clear that the exclusion applies only to agents or employees of the owner (JRJ) who are not employees of the named insured ITS in this instance.
 
 
 39
 Coming around full circle, the lease which, pursuant to ICC regulations, mandated that Williamson be under the control of ITS, established that the driver was a permissive user within Underwriters provision (4). Underwriters conceded at oral argument without risking any possible reflection on professional competence that an insurer cannot subrogate against its own insured and Trinity so held. As stated in American Surety Co. v. Canal Ins. Co., 4 Cir., 1958, 258 F.2d 934, 937, there is no right of subrogation where an insurance company, in derogation of its contract, seeks to be subrogated in the right of its named assured against an additional insured under the omnibus clause, for the additional insured, except as limited in the contract, is entitled to the same protection as the named insured.
 
 
 40
 Finally, Underwriters argues that under Georgia law,[26] where liability policies issued to the owner and driver of a vehicle each covers an injury, and one or both policies contain an excess insurance clause pertaining to nonownership coverage, the policy issued to the owner is held to be the primary policy, the insurer being liable up to the limits of the policy without apportionment. According to this theory, only after the primary policy has been exhausted is there recourse to the policy providing nonownership coverage. In support of this contention, Underwriters cites the well-reasoned opinion of Judge Hall in Chicago Ins. Co. v. American Southern Ins. Co., 1967, 115 Ga.App. 799, 156 S.E.2d 143. However, the facts in that case differ vastly from those before us. In Chicago, the accident occurred while the owner was a passenger in his own car, the driver having operated the car with the owner's permission. The driver's and the owner's policies contained "other insurance" provisions. The Georgia Court held that the owner seeking damages for his injuries from the driver could look to his own insurer for primary coverage up to the limits of the policy. Once that policy was exhausted, the driver's insurer was liable up to the limits of its policy. Chicago is thus plainly inapposite as is clear from State Farm Fire & Casualty Co. v. Holton, 1974, 131 Ga.App. 247, 205 S.E.2d 872, 874, which stated the Georgia rule which is applicable to the present facts: where both insurers attempt to limit their liability to excess coverage if there is other insurance, "then the clauses are irreconcilable, cancel each other out, and the liability is to be divided equally between them".
 
 
 41
 The District Court correctly relied on Bradshaw v. St. Paul Fire & Marine Ins. Co., N.D.Ga., 1964, 226 F.Supp. 569 in holding Carolina and Underwriters to be co-primary.[27] Bradshaw, which started as an Erie prediction, by time, tide and these intervening Georgia decisions, has become an Erie fact. Holton, supra; Southern Home Ins. Co. v. Willoughby, 1971, 124 Ga.App. 162, 182 S.E.2d 910.
 
 
 42
 AFFIRMED.
 
 
 
 [1]
 The lease, dated December 1, 1972, extended for one year and was automatically renewable unless cancelled
 
 
 [2]
 Lease P 4:
 Lessor (JRJ) agrees that the equipment described herein is, and at all times during the continuance of this agreement, will be kept in first class condition and repair and Lessor (JRJ) further agrees to pay all of the operating expenses of said equipment, including repairs, replacement of parts, tires and for the necessary maintenance of said equipment, to include painting when necessary, state license fees, fuel, mileage and other taxes, bond premiums and insurance covering fire, theft, collision and any and all other expenses, including any and all damages sustained to said equipment, irrespective of the manner in which said damages were caused.
 
 
 [3]
 Lease P 8:
 That Lessor (JRJ) assumes all responsibility and will pay the salaries and wages of the drivers, helpers, and/or agents of said Lessor (JRJ) as may be used in connection herewith, also all social security and payroll deductions required by law, workmen's compensation insurance, and will pay for and obtain any and all necessary state license tags and registrations and affix same to said equipment and to pay tolls, and to pay for and supply all gasoline, oil, tires and any and all supplies and repairs needed to keep said equipment up to minimum operating efficiency.
 
 
 [4]
 Lease P 9:
 That it is expressly understood between the parties hereto that the drivers, helpers, and/or agents of Lessor (JRJ) used by Lessor (JRJ) to fulfill this contract are not to be construed in any way to be an employee, agent or representative of Lessee (ITS) and that the relationship of Lessor (JRJ) to Lessee (ITS) is that of an independent contractor, and that said parties hereto recognize this relationship to the extent that said Lessor (JRJ) will personally assume full responsibility and take such action that is necessary to hold harmless hence from any claims of drivers, helpers, employees or agents of said Lessor (JRJ).
 
 
 [5]
 Lease P 13:
 Lessor will provide property damage and public liability as required and on file with the Department of Transportation, and the Interstate Commerce Commission and respective state regulatory commissions. Said public liability insurance in the amount of: $100,000.00 for bodily injury to any one person or a total of $300,000.00 for any one accident and property damage insurance in the amount of $100,000.00 for any one accident. Lessor (JRJ) shall furnish a certificate of such insurance showing Lessee (ITS) as named insured, including . . . notice of cancellation to Lessee (ITS) prior to the execution of this Agreement, and shall keep same in full force and effect for duration of this Agreement. In the event Lessor (JRJ) is unable to furnish such evidence of insurance to Lessee (ITS), then Lessor (JRJ) hereby authorizes Lessee (ITS), at Lessor's (JRJ's) expense, to procure and obtain such insurance for and in behalf of Lessor (JRJ).
 
 
 [6]
 49 C.F.R. § 1057.4 provides in pertinent part:
 (a) Contract requirements. The contract, lease, or other arrangement for the use of such equipment:
 (4) Exclusive possession and responsibilities. Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement. . . .
 
 
 [7]
 Lease P 3:
 Lessee (ITS) will use said equipment in its service as a contract carrier in the transportation of commodities, by motor vehicle, under the various permits which it now holds or may subsequently acquire, and such equipment so furnished to Lessee (ITS) shall be at all times while this agreement is in effect, in the exclusive possession, control and use of the Lessee (ITS). Lessee (ITS) agrees to assume full responsibility to the public, the shippers, and all State and Federal Agencies.
 
 
 [8]
 The remainder of this paragraph of the Long Haul Truckmen endorsement stated the conditions under which the insurance would apply:
 "(1) (if) the accident occurs while such automobile is being used exclusively in the business of the named insured (JRJ) and over a route the named insured is authorized to serve by federal or public authority, or (2) if such person or organization so engaged is subject to the security requirements of any motor carrier law and satisfies any such requirements by any means other than automobile liability insurance, or (3) if such person or organization so engaged is insured under an automobile liability insurance policy which affords coverage for automobiles hired by such person or organization but which does not insure on a direct primary basis the owners of such automobiles and the agents and employees of such owners, while such automobiles are being used exclusively in the business of such person or organization and over a route such person or organization is authorized to serve by federal or public authority. . . ."
 
 
 [9]
 This "other insurance" clause also appeared in the Long Haul Truckmen endorsement
 
 
 [10]
 The basis of this position as to Williamson was that his use was not with JRJ permission, the right to give such permission having been delegated by JRJ to ITS through the lease (see note 7, supra )
 
 
 [11]
 For an explanation of this "primary as a matter of law" contention, see the discussion at text accompany notes 15-18, infra
 
 
 [12]
 The District Court stated:
 The United States Court of Appeals for the Fifth Circuit in Simmons v. King, 478 F.2d 857 (5th Cir. 1973), held that an ICC certificated carrier, as is I.T.S., must assume liability for the actions and negligence of a driver operating a vehicle under its certificate of authority. That obligation is imposed by 49 C.F.R. § 1057.4 which mandates the inclusion of certain provisions in the lease agreement and creates a statutory employment relationship between driver and carrier. The required lease provision which is contained in the lease agreement in question recites that for the duration of the lease the leased equipment is "in the exclusive possession, control and use of the lessee . . ." Consequently, Williamson's admittedly authorized use of the vehicle in question must, of necessity, have been with the permission of I.T.S. and the Underwriters policy, by its terms, covers Amos Williamson.
 Order of Court, at 3.
 
 
 [13]
 7 Cir., 1962, 309 F.2d 283
 
 
 [14]
 The parties, by going to court before a merits determination was reached in the Smith action, have forced us to assume, or at least that we may assume that they assume that Williamson was negligent for all purposes
 
 
 [15]
 Carolina has abandoned the position taken below (see note 10, supra and accompanying text) that Williamson was not an additional insured under the terms of the policy
 
 
 [16]
 The District Court did not expressly address this issue
 
 
 [17]
 Section 215 of the Act, 49 U.S.C.A. § 315 provides in part:
 § 315. Security for protection of public
 No certificate or permit shall be issued to a motor carrier or remain in force, unless such carrier complies with such reasonable rules and regulations as the Commission shall prescribe governing the filing and approval of surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, in such reasonable amount as the Commission may require, conditioned to pay, within the amount of such surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles under such certificate or permit, or for loss or damage to property of others. . . .
 
 
 [49]
 C.F.R. § 1043.1(a) provides:
 Except as provided in paragraph (c) of this section, no common or contract carrier subject to Part II of the Interstate Commerce Act shall engage in interstate or foreign commerce, and no certificate or permit shall be issued to such a carrier or remain in force unless and until there shall have been filed with and accepted by the Commission a surety bond, certificate of insurance, proof of qualifications as a self-insurer, or other securities or agreements, in the amounts prescribed in § 1043.2, conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles in transportation subject to Part II, Interstate Commerce Act, or for loss of or damage to property of others.
 
 
 [18]
 That endorsement, ICC form BMC 90, reads in part:
 Within the limits of liability hereinafter provided it is further understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement, by the insured, shall relieve the Company from liability hereunder or from the payment of any such final judgment, irrespective of the financial responsibility or lack thereof or insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which this endorsement is attached are to remain in full force and effect as binding between the insured and the Company, and the insured agrees to reimburse the Company for any payment made by the Company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the Company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.
 
 
 [19]
 The holding that Ringsby-lessee (in the position of ITS here) was an additional insured under the Carolina-lessor policy does not control the present case because that Carolina policy did not contain the Long Haul Truckmen endorsement provision (2). See note 22, infra
 
 
 [20]
 Counsel for Carolina admitted at oral argument that both insurers Carolina and Underwriters filed certificates of insurance with the ICC on behalf of their respective insureds, JRJ and ITS. Thus, it is possible to assume that both policies contain the ICC endorsement. Because of the result we reach, it is unnecessary to consider what effect, if any, such an assumption would have on the outcome
 
 
 [21]
 For example, Mrs. Smith would be in a position to assert such policy grounds
 
 
 [22]
 As noted earlier, the District Court held that ITS was not an additional insured under Carolina's policy because of the Long Haul Truckmen's endorsement (2). The District Court cited no authority to support this holding, but it was unquestionably correct. See, e. g., Wellman v. Liberty Mutual Ins. Co., 8 Cir., 1974, 496 F.2d 131, 137-39; Pacific Intermountain Express Co. v. Liberty Mutual Ins. Co., 7 Cir., 1966, 359 F.2d 735. Cf. Transport Ins. Co. v. Manufacturers Casualty Ins. Co., E.D.Ark., 1964, 226 F.Supp. 251, 256, aff'd sub nom. Pacific Nat'l Ins. Co. v. Transport Ins. Co., 8 Cir., 1965, 341 F.2d 514 (Truckmen's endorsement excluded others except employees of lessor)
 
 
 [23]
 See note 12, supra for the District Court's precise holding
 
 
 [24]
 Simmons did not involve insurance issues at all. That case was concerned only with the liability of the lessee (operating under an ICC certificate) for the acts of the driver in the negligence action which the injured party had brought against the driver, the lessor, and the lessee. Thus, while the driver's statutory employee status in Simmons created vicarious liability, no issue was before the Court as to whether the driver was an additional insured under the lessee's policy
 
 
 [25]
 Underwriters looks to Float-Away Door Co. v. Continental Casualty Co., 5 Cir., 1966, 372 F.2d 701, as authority for the proposition that we should give effect to the "nonownership excess only" provision (6) whereby even if Williamson was an additional insured under the ITS policy, such coverage would not be primary but excess only. But Float-Away provides no help to Underwriters. Apart from several other salient factual distinctions, both policies at issue in Float-Away contained the same "nonownership excess only" clause and the nonowner in that case was an additional insured under the owner's policy. Thus, the owner's policy was considered primary. Here ITS was not an additional insured under Carolina's policy. See note 22, supra
 
 
 [26]
 Under the lease agreement, Georgia law was to apply
 
 
 [27]
 At oral argument, counsel for Carolina sought to distinguish Bradshaw on the ground that it was a non-ICC situation. This effort was made in connection with the assertion that the Underwriters policy was primary as a matter of law. We have rejected this position. The fact that Bradshaw did not involve an ICC carrier is of no consequence