28 F.3d 107
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NORDSTROM, INC., Plaintiff-Appellant,
v.
HIGHWAY GROUP, INC., d/b/a Highway Merchandise Express,
Inc., American Home Assurance Company, et al.,
Defendant-Appellee.
 No. 93-55076.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 9, 1994.*
Decided June 20, 1994.
 
 Before: FARRIS, O'SCANNLAIN and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 * Highway Merchandise Express, Inc. ("HMX-1"), an interstate motor common carrier, was a subsidiary of Burlington Air Express, Inc. From July 1987 through April 1989 American Home insured HMX-1 in compliance with the Interstate Commerce Commission's ("ICC") requirement that carriers to insured as a prerequisite to being a certified interstate motor common carrier. ER 434; see 49 U.S.C. Sec. 10927(a)(3) (1988). In July 1987, American Home filed a BMC-32 form with the ICC, pursuant to which American Home agreed to respond directly to cargo claimants for the legal liabilities of HMX-1. ER 434. American Home did not cancel the BMC-32 filing until November 23, 1990.
 
 
 3
 In April 1989, Burlington and HMX-1 sold some of HMX-1's assets, including the right to use the name "Highway Merchandise Express" and the acronym "HMX," to Highway Group, Inc. "HMX-2"). ER 435. HMX-1 then ceased doing business as an interstate common carrier. ER 436. American Home canceled its insurance policy as of May 1, 1989. ER 328.
 
 
 4
 On about June 1, 1989, HMX-2 started transporting goods under the name "Highway Merchandise Express" and "HMX." ER 436. Between June and October 1989, Nordstrom hired HMX-2 to ship some of its goods. HMX-2 delivered many of the goods in a damaged condition and failed to deliver some of the cargo. Nordstrom filed 354 loss and damages claims with HMX-2 for actual damages totalling $238,632.28. HMX-2 did not pay Nordstrom's claims, so Nordstrom sought payment from HMX-2's insurers.[1]
 
 
 5
 At no time has American Home insured HMX-2 for liability arising out of its operations as an interstate motor common carrier. From May 1, 1989 to February 7, 1990, HMX-2 was insured by Lloyd's of London. ER 437. This policy was in effect throughout the duration of plaintiff's losses.
 
 
 6
 Lloyd's of London declined payment because American Home still had a BMC-32 Endorsement form on file with the ICC. So, Nordstrom sought payment from American Home.[2] American Home declined payment because the BMC-32 form related solely to HMX-1, which ceased operations before Nordstrom's cargo was shipped.
 
 
 7
 On September 6, 1991, Nordstrom filed a complaint against HMX-2 and American Home in the Superior Court of California. American Home removed the case to federal court. See 28 U.S.C. Sec. 1441 (1988 & Supp. III 1991). HMX-2 did not respond to the complaint, and Nordstrom obtained a default judgment. Nordstrom and American Home filed cross-motions for summary judgment in October or 1992. The district court granted American Home's summary judgment motion on grounds that American Home was not the insurer of Highway Group, Inc. ER 438-39. Nordstrom appeals.
 
 II
 
 8
 The district court had jurisdiction pursuant to 49 U.S.C. Sec. 11707 and 28 U.S.C. Sec. 1441. We have jurisdiction under 28 U.S.C. Sec. 1291. "A grant of summary judgment is reviewed de novo to determine whether, viewing the evidence in a light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the relevant substantive law." Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 9
 Congress adopted 49 U.S.C. Sec. 10927 " 'to assure to members of the public ... that a certificated carrier has independent financial responsibility ... to pay for losses created by its carrier operations.' " Millers Nat'l Ins. Co. v. Axel's Express, Inc., 851 F.2d 267, 269 (9th Cir.1988) (citing Carolina Casualty Ins. Co. v. Underwriters Ins. Co., 569 F.2d 304, 312 (5th Cir.1978)), cert. denied, 489 U.S. 1012 (1989). Subsection 10927(3) states that the ICC
 
 
 10
 may require a motor common carrier providing transportation under a certificate to file with the [ICC] a type of security sufficient to pay a shipper or consignee for damage to property of the shipper or consignee placed in the possession of the motor common carrier as the result of transportation provided under this subtitle.
 
 
 11
 49 U.S.C. Sec. 10927(3) (1988). The ICC has promulgated regulations that prohibiting common carriers from engaging in interstate commerce unless they file with the ICC "surety bonds, certificates of insurance, proof of qualifications as self-insurer or other securities or agreements." 49 C.F.R. Sec. 1043.1(a) (1993). The BMC-32 form is an endorsement of insurance for cargo liability pursuant to 49 U.S.C. Sec. 10927.
 
 
 12
 Appellant argues American Home is liable for the damaged goods because at the time of the incident, its BMC-32 form was still on file with the Interstate Commerce Commission. Appellant argues that "by virtue of its public filings, AMERICAN HOME warranted that Highway Merchandise Express had sufficient and continuing cargo insurance to insure its compliance with [the] Interstate Commerce Act and ICC insurance regulations." In making this argument, appellant obfuscates the distinction between HMX-1 and HMX-2. The BMC-32 form referred only to HMX-1, which ceased operation before Nordstrom shipped its goods. In fact, the BMC-32 form referred to attached insurance policy number 83708, which lists Burlington Northern as the insured. ER 122, 113-121.
 
 
 13
 Nordstrom does not argue that it was misled and admits that it never "relied on either the AMERICAN HOME B.M.C. 34 or the B.M.C. 32 Endorsement before shipping with HMX." Kathy Burnett's declaration states that at Nordstrom's request, "HMX furnished Nordstrom with a copy of a Certificate of Insurance listing Nordstrom as the certificate holder and Lloyd's of London as the insurer." Burnett Decl. at 3. So Nordstrom knew Lloyd's was the Highway Group's insurer prior to shipping the goods.
 
 
 14
 Thus, appellant's sole argument is that because American Home failed to cancel its BMC-32 form, it can be held liable for HMX-2's actions. The only basis for this argument is that HMX-2 had the same name as the insured listed on the BMC-32 form. Nordstrom presented no evidence otherwise linking HMX-1 and HMX-2.
 
 
 15
 We AFFIRM summary judgment.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 On April 18, 1990, HMX-2 filed a voluntary bankruptcy petition in the Central District of California
 
 
 [2]
 It appears Nordstrom is suing American Home, instead of Lloyd's, because Nordstrom's shipments will not be fully paid under the Lloyd's policy. 333 of Nordstrom's 354 damage claims are for amounts below Lloyd's $2,500 deductible and $52,000 of the remaining claims also fall below the deductible. However, Lloyd's probably will not be able to escape liability because it too would have been required to file a BMC-32 form with the ICC. See 49 C.F.R. Sec. 1043.2(b)(2) (1993)