Frank R. Bayger, J.
This is a declaratory judgment action which presents several issues of first impression in the State of New York. The action was commenced by Kansas City Fire and Marine Insurance Company ("Kansas City”) to determine, among other things, its obligation to defend and provide insurance coverage to defendants Chautauqua Transit, Inc. and Harold E. Vincent in a personal injury action arising out of an accident which occurred in Erie County on June 24, 1970. Kansas City claims for a number of reasons that coverage and a defense for these defendants should be provided by the insurance carrier for Blue Bird Coach Lines, Inc. ("Blue Bird”), the Hartford Insurance Group ("Hartford”).
*111 A brief examination of the factual background leading to this action is necessary. Blue Bird operates as a common carrier public bus line in the Western New York area pursuant to Certificates of Public Convenience and Necessity issued by the New York State Public Service Commission. Chautauqua also operates a bus line in the same general area pursuant to Certificates of Public Convenience and Necessity. Although both corporations are independent of each other, they have common shareholders and similar executive structures.
Because of the close relationship of the two corporations, Blue Bird often relied on Chautauqua to provide it with buses to meet its scheduled or chartered trips. Chautauqua would provide Blue Bird with a bus and a driver; Blue Bird would in turn pay Chautauqua for this service — a payment which meant a profit to Chautauqua. On June 24, 1970, Blue Bird placed an order with Chautauqua for a bus and driver to make a Blue Bird run between Jamestown and Buffalo, New York, a franchised route held by Blue Bird pursuant to a Public Service Commission Certificate. The driver was the defendant Harold Vincent ("Vincent”). Although paid by Chautauqua and driving a Chautauqua bus, Vincent wore a Blue Bird uniform.
At approximately 7:45 on the evening of the 24th, the bus was involved in a serious accident with another automobile. Two passengers of the automobile were killed, four others were seriously injured. At the time of the accident Chautauqua buses were insured by Kansas City. Blue Bird was insured by the Hartford. Both companies were also covered by "excess” policies issued by the Jefferson Insurance Company of New York. Both the Hartford arid Kansas City policies contained the "Public Service Commission Endorsement” ("endorsement”) required for all motor carriers in the State. The endorsement provides in pertinent part as follows: "In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby agrees to pay, within the limits of liability hereinafter provided, any final judgment recovered against the insured for bodily injury to or death of any person, or loss of or damage to property of others (excluding injury to or death of the insured’s employees while engaged in the course of their employment, and properly transported by the insured, designated as cargo), resulting from negligence in the operation, maintenance, or use of motor vehicles under certificate óf public convenience and *112 necessity or permit issued to the insured by the Public Service Commission of the State of New York, regardless of whether such motor vehicles are specifically described in the policy or not.”
The Kansas City policy to Chautauqua also contained a "spare bus” endorsement. This endorsement provides in toto that: "It is agreed that the Bus described (1956 CMC Serial #PD41041737) is not in daily service and used only as a spare bus or as a temporary substitute for a general passenger service bus while such bus is withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction. This classification in applicable only if the company insures all general passenger service buses owned or operated by the named insured.”
It is this "spare bus” that was provided to Blue Bird on June 24, 1970 and which was involved in the accident that same day. Kansas City commenced this action seeking a declaration that it has no obligation to provide a defense or insurance coverage to Chautauqua or Vincent in the personal injury action. Its reasons are many: 1) that at the time of the accident Vincent was an ad hoc employee of Blue Bird; 2) that under the Public Service Endorsement of the Hartford policy, Chautauqua and Vincent are named insureds; 3) that the Public Service Endorsement in the Kansas City policy has no application to the accident because Chautauqua had no Certificate of Public Convenience and Necessity for the route on which the accident occurred; 4) that Chautauqua breached its "warranty” in the spare bus endorsement.
The questions raised by Kansas City are, of course, the issues to be decided by this court. Hartford contends that it is obligated to defend only Blue Bird and that this defense arises solely as a result of the Public Service Endorsement. It is Hartford’s position that Vincent was not an ad hoc employee at the time of the accident and that Kansas City should defend Chautauqua against any liability arising out of the negligence of its employee.
The determination of whether an individual is an ad hoc employee will, of course, depend on the particular fact situation; however, the rule of law to be applied in making that determination is clear: "[A]s long as the employee is furthering the business of his general employer by the service rendered to another, there will be no inference of a new relation unless command has been surrendered, and no inference of its *113 surrender from the mere fact of its division” (Szczepkowicz v Khelshek Realty Corp., 280 App Div 524, 528, citing Charles v Barrett, 233 NY 127, 129).
From the testimony presented to the court, I must conclude that Vincent was not an ad hoc employee of Blue Bird at the time of the accident. Louis Magnano, President of Chautauqua, testified that Chautauqua regularly supplied buses and drivers to Blue Bird and that Chautauqua made a profit as a result of this service. At the time of the accident, Vincent was furthering the business of his employer, Chautauqua. There was no testimony presented to establish that Vincent moved from the direction and control of one employer to another.
The next two issues raised by the plaintiff involve questions of contractual interpretation. First, are Chautauqua and Vincent "insureds” under the Public Service Endorsement of Blue Bird’s policy? The accident happened on a franchised run of Blue Bird. As a result, there can be no question that the endorsement covers any liability of Blue Bird; however, it does not require Hartford to provide a defense and coverage to the owner of the bus, Chautauqua, and its driver-employee, Vincent. The obvious intent of the Public Service Endorsement is to establish security for the protection of the public by requiring payment of judgments at least within the minimum coverage provided in the policy (see, Transportation Law, § 170). The endorsement seeks to secure payment rather than limit coverage. Blue Bird’s potential liability arises out of the fact that an accident occurred on one of its franchised routes. The endorsement operates to protect the victims of that accident in the event of Blue Bird’s liability; however, coverage for Chautauqua and Vincent must come from the Kansas City policy because the endorsement does "[n]ot require that financial responsibility be established for other than a judgment against the carrier itself (Chesher v United States Cas Co., 303 NY 589, 594).
Similarly, it cannot be argued that Kansas City has no defense or coverage obligation because the accident did not occur on a Chautauqua route. This again is an attempt to use the endorsement as a shield against the public when its intent, as explained by the Court of Appeals in Chesher (supra) is to establish the financial responsibility of motor carriers by insuring payment of judgments against them. The endorsement must be read together with the policy and the policy "[R]emains in full force and effect excepting as it may *114 be altered by the words of the endorsement” (Chapin Owen Co. v Newman, 201 Misc 1072, 1075). The endorsement does not alter the general liability policy in any way. The fact that the accident did not occur on a Chautauqua "route” also does not affect the insurer’s obligation to defend and cover. Could Kansas City deny coverage if the accident happened while the bus was being driven to the Blue Bird garage? Certainly not. The endorsement does not limit Kansas City’s obligations to defend and cover accidents which occur only on the insured’s franchised routes.
A remaining question concerns the "spare bus” endorsement contained in Kansas City’s policy with Chautauqua. Plaintiff contends that the spare bus endorsement is a warranty as that term is defined by section 150 of the Insurance Law.[1] This court cannot find that the language of the endorsement is a warranty as defined by section 150. The endorsement simply recites the existence of a spare bus and its use by the insured under certain enumerated conditions. (The endorsement acknowledges that the bus will be used by Chautauqua.) Furthermore, there was no evidence before the court to establish that the bus in question was being used as anything but a temporary substitute. The spare bus endorsement does not have "[T]he effect of requiring, as a condition precedent of the taking effect of * * * [the] contract * * * the existence of a fact which tends to diminish * * * the risk of the occurrence of any loss, damage, or injury within the coverage of the contract” (Insurance Law, § 150, subd 1).
The final issue concerns Kansas City’s disclaimer of liability on the policy. The accident occurred in June of 1970. The insurer immediately or soon thereafter determined that the bus was owned by Chautauqua, was operating on a Blue Bird line, driven by a Chautauqua employee and was the "spare bus” described in the policy. By letter dated November 11, 1970, representatives of the plaintiff informed Chautauqua *115 that the defense of the action was being referred to the company’s attorney. The declaratory judgment action was not commenced until January, 1971, 18 months after the accident. 18 months of investigation were not necessary for plaintiff to finally decide to disclaim. The plaintiff, with the information it obtained immediately or soon after the accident, could have disclaimed within a reasonable time. The 18-month delay was not reasonable within the meaning of section 167 of the Insurance Law and plaintiff’s disclaimer is invalid.
Based upon the foregoing, plaintiff’s declaratory judgment action is dismissed and plaintiff is ordered to provide insurance coverage to Chautauqua Transit, Inc. and its employee according to the terms of the insurance policy.

. Subdivision 1 of section 150 of the Insurance Law provides as follows: "The term 'warranty’ as used in this section, means any provision of an insurance contract which has the effect of requiring, as a condition precedent of the taking effect of such contract or as a condition precedent of the insurer’s liability thereunder, the existence of a fact which tends to diminish, or the non-existence of a fact which tends to increase, the risk of the occurrence of any loss, damage, or injury within the coverage of the contract. The term 'occurrence of loss, damage, or injury’ shall be deemed to include the occurrence of death, disability, injury, or any other contingency insured against, and the term 'risk’ shall be deemed to include both physical and moral hazards.”