**CAROLINA CASUALTY INSURANCE COMPANY, Plaintiff,**

v.

**TRANSPORT INDEMNITY COMPANY, Defendant.**

**Civ. A. No. 79–1962–1.**

United States District Court,
D. South Carolina,
Charleston Division.

July 7, 1981.

Stephen E. Darling, Sinkler, Gibbs & Simons, Charleston, S. C., for plaintiff.

Keating L. Simons, III, Holmes, Thomson, Logan & Cantrell, Charleston, S. C., for defendant.

## ORDER

HAWKINS, District Judge.

The parties to this action have agreed that the court should decide this case based

on a Stipulated Statement of Facts filed June 24, 1980, and on proposed Conclusions of Law filed by the parties with the court. The court hereby adopts the said Stipulated Statement of Facts verbatim.

## CONCLUSIONS OF LAW

I find, initially, that this action is properly before the court pursuant to Title 28, United States Code Section 2201, to determine various rights, duties and liabilities of the parties under the terms and provisions of two insurance policies, and that there is an actual controversy between the parties hereto.

I further find that all parties are properly within the jurisdiction of the court, as is the subject matter of this action, and that the matter in controversy, exclusive of interest and costs, exceeds the sum of Ten Thousand and 00/100 ($10,000.00) Dollars.

This case involves a coverage dispute between two insurance carriers who issued policies to a truck owner/lessor and his lessee. The carrier for the lessor, Carolina Casualty, and the carrier for the lessee, Transport Indemnity, have each alleged in their respective pleadings that they have no coverage, or, in the alternative, that any coverage afforded by them is excess over that of the other.

Basically, this court is asked to resolve three questions: (1) Does the Plaintiff, Carolina Casualty, afford coverage for the accident in question? (2) Does the Defendant, Transport Indemnity, also afford coverage for this accident? and (3) Whether either policy affords only excess coverage, vis-a-vis the other. Only if the first two questions are answered in the affirmative will it be necessary to address the third.

At this point, it is important to define the limited scope of this inquiry. I have been aided by the parties in this regard insofar as they have jointly prepared and filed a stipulated Statement of Facts. Among other things, the parties have agreed that, for the purposes of this action, John Driggers, the driver of the truck, was negligent and that his negligence was the proximate cause of all damages for which payments were made. Thus, Driggers was the one primarily obligated to pay those damages with the lessor and lessee being liable derivatively, if at all. In my view, then, the initial coverage issues listed above boil down to whether Driggers was insured under one or more of the policies at issue. In light of the conclusions reached herein, it will not be necessary to address any coverage issues with respect to the parties who may be liable on a derivative basis.

Turning to the Carolina Casualty policy, there is no question but that it covered Driggers in this accident. Carolina Casualty specifically insured the tractor/trailer involved in the accident. It was a scheduled vehicle, having been listed on the Amendment of Escrow Premium Payment endorsement which was effective May 17, 1977. Thus, the tractor/trailer was a defined automobile under Paragraph (a)(1) of Insuring Agreement IV. Driggers was driving the tractor/trailer with the express permission of the named insured, Richard McElmurray, and as such, came within the definition of "insured" in Paragraph (a) of Insuring Agreement III.

Therefore, pursuant to coverages A and B of Insuring Agreement I, Carolina Casualty had agreed to pay all sums which Driggers became legally obligated to pay for bodily injury and property damage arising out of the use of the defined automobile, the tractor/trailer. On this basis, I find that, with respect to the accident in question, Carolina Casualty afforded coverage to the vehicle, its owner and the driver, Driggers, the one whose negligence caused the accident.

Any coverage arguably extended by Transport Indemnity pursuant to its policy is quite different from that of Carolina Casualty. Refrigerated Transport, Inc., being the only named insured (except for several corporate entities not here relevant) and there being no omnibus clause in the Transport Indemnity policy, the only clause which would bring the tortfeasor, Driggers, within the definition of insured is contained in Part 1, Section 2, the pertinent portions of which are as follows:

The word "INSURED" shall mean, . . . , any other person, firm or organization to whom insurance protection has been extended under the policy or made so by any provision of law.

There is no other express provision by way of endorsement or otherwise in the Transport Indemnity policy which includes Driggers within the definition of "insured." Thus, unless there is "any provision of law" which requires insurance protection to be extended to Driggers by Transport Indemnity under the circumstances of this case, Driggers is not an insured and Transport Indemnity has no coverage.

In the context of this case, it is clear that the operative provision has reference to the Interstate Commerce Act, codified as Title 49 of the United States Code, and the enabling act for the South Carolina Public Service Commission, Sec. 58–3–10 et seq., Code of Laws of South Carolina (1976). Also to be considered are the various regulations promulgated pursuant to each. The issue, then, with respect to any coverage afforded by Transport Indemnity, is whether those statutes or regulations require that Driggers be deemed to be an insured under the facts of this case.

The pertinent statutes and regulations on both the state and federal levels are substantially similar and, to the extent they are relevant here, each regulatory scheme contains two basic thrusts. One is directed towards ensuring that the certificated carrier obtains liability insurance in an amount sufficient to adequately compensate third parties injured by reason of the operations of the certificated carrier. 49 U.S.C. Sec. 315; 49 C.F.R. Sec. 1043.1(a); S.C. P.S.C. Rule 103–170.

The second major area of regulation relates to the leasing of trucks and trailers. The regulations provide that the lease agreement must contain provisions placing responsibility and control over the operation of the vehicle in the hands of the lessee. 49 C.F.R. Sec. 1057–2(d); S.C. P.S.C. Rule 103–222(1)(4). It is the combined effect of these regulatory schemes which has formed the basis of the position taken by insurance

carriers for truck lessors to the effect that coverage afforded by the lessee's insurer is always primary.

Numerous cases have addressed the issue of the impact of I.C.C. and P.S.C. regulations on coverage disputes between insurers of truck lessees and lessors. In a number of cases and contexts arguments have been advanced that a lessee's coverage is primary as a matter of law by virtue of the control and responsibility regulations and/or the financial responsibility regulations. Such arguments have met with success in many cases, notably *Argonaut Insurance Company v. National Indemnity Company*, 435 F.2d 718 (10th Cir. 1971) and *Hagans v. Glens Falls Insurance Company*, 465 F.2d 1249 (10th Cir. 1972).

That line of cases is in direct conflict with a series of cases reaching the opposite result. See, e.g. *Carolina Casualty Insurance Company v. Insurance Company of North America*, 595 F.2d 128 (3rd Cir. 1979) and *Carolina Casualty Insurance Company v. Underwriters Insurance Company*, 569 F.2d 304 (5th Cir. 1978). These two cases held, in this connection, that I.C.C. Regulations are not dispositive in a coverage dispute between two insurance carriers. I note also that this view is in accord with an older case in the Third Circuit, *Allstate Insurance Company v. Liberty Mutual Insurance Company*, 368 F.2d 121 (3rd Cir. 1966).

With respect to the impact of the South Carolina Public Service Commission Regulations, the recent case of *American Interinsurance Exchange v. Commercial Union Assurance Company*, 605 F.2d 731 (4th Cir. 1979) is controlling. There the Court held that the P.S.C. Regulations "merely ensure that viable insurance will be available to innocent victims of automobile accidents. They in no way require that such insurance shall be primary over other available insurance." 605 F.2d at 736. Thus, my concern at this juncture is limited to the impact of the Interstate Commerce Act and I.C.C. Regulations promulgated pursuant thereto.

■ While there are no Fourth Circuit Court opinions directly addressing the same

issue with respect to regulations promulgated by the Interstate Commerce Commission, I am convinced that the same result would be reached as that in *American Interinsurance Exchange, supra.* Both of the views briefly set forth above are purportedly based on the public policy underlying the Interstate Commerce Act and I.C.C. Regulations. Although there was no discussion in *Argonaut, supra,* as to the dictates of public policy in this respect, the Court in *Hagans, supra,* stated, once again without discussion, that the *Argonaut* decision was "obviously grounded on public policy." 465 F.2d at 1252. In contrast, the cases holding that the Interstate Commerce Act and I.C.C. Regulations do not make the lessee's coverage primary as a matter of law have undertaken a more thorough, and in my view more persuasive, examination of the nature of the public policy involved.

By way of example, the Court in *Carolina Casualty Insurance Company v. Insurance Company of North America, supra,* looked for guidance to the U. S. Supreme Court opinion in *American Trucking Association v. United States,* 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953). In that case the Supreme Court had identified a number of abuses to which the regulations were directed, including sharing of authority, evasion of safety requirements, and evasion of financial responsibility to the public. The Third Circuit Court went on to note that the lessee's carrier "could not absolve itself of a duty to make the initial payment of compensation to an injured member of the public, in the event that neither . . . party involved could answer financially for the damage." 595 F.2d at 137. Especially pertinent here is the holding in that case that:

> While a lessee cannot free itself of federally imposed duties when protection of the public is at stake, the federal requirements are not so radically intrusive as to absolve lessors or their insurers of otherwise existing obligations under applicable state tort law doctrines or under contracts allocating financial risks among private parties. 595 F.2d at 138.

In another recent case, *Carolina Casualty Insurance Company v. The Underwriters Insurance Company,* 569 F.2d 304 (5th Cir. 1978) the Fifth Circuit employed reasoning similar to that just expressed. There the Court held:

> . . . the endorsement does not make (the insurer of the licensed carrier) the primary insurer as a matter of law . . . I.C.C. policy factors are frequently determinative where protection of a member of the public or a shipper is at stake, but those factors cannot be invoked by another insurance company which contracted to insure a specific risk and which needs no equivalent protection. 569 F.2d 313.

That approach is particularly appropriate here in that Carolina Casualty has issued a policy specifically insuring the vehicle and its owner, and, through its omnibus clause, the negligent driver. Having contracted to insure the precise risk which occurred, and charged and collected a premium therefor, Carolina Casualty should not be permitted to absolve itself of its obligations to those whom it specifically insured.

In choosing between two apparently irreconcilable lines of cases, I am impressed with the evident effect on the law in this area of the decision of the United States Supreme Court in *Trans American Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.,* 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975). The holding there, albeit narrow by its own terms, was that an indemnification agreement contained in the lease which placed responsibility on the lessor for payments to injured third parties did not violate the public policy underlying the Interstate Commerce Act and I.C.C. Regulations. The Court noted that with respect to the responsibility and control regulations, the I.C.C. was concerned with that "control in the lessee that makes and keeps it responsible to the public, the shipper, and the Commission." 423 U.S. at 39, 96 S.Ct. at 234, 46 L.Ed.2d at 178. There is, of course, no similar concern expressed regarding the protection of insurance carriers for truck lessors. Implicit in this approach is the proposition that once the public is protected by the existence of an adequate fund, the purpose of the regulations is fulfilled and

the parties and their insurers are free to allocate ultimate responsibility among themselves.

Considering the foregoing authorities, I am convinced that the public policy of protecting innocent third parties from financially irresponsible truckers does not require that the insurer for an I.C.C. certificated carrier be primarily liable as a matter of law in a case where ample coverage is available through the insurer of the owner of the vehicle. I am also persuaded that if and when the Fourth Circuit Court of Appeals addresses the issue it will reach a result consistent with *American Interinsurance Exchange, supra,* and hold that I.C.C. Regulations do not make the lessee's coverage primary.

*American Interinsurance Exchange, supra,* specifically holds that the South Carolina Public Service Regulations requiring the lessee of a truck to obtain liability insurance in his name, do not operate to make that insurance primary as a matter of law. There being no basic distinction between the South Carolina Public Service Commission Regulations and those of the I.C.C., I find that the I.C.C. Regulations likewise do not require that a lessee's insurance shall be primary over other available insurance.

The determination that neither P.S.C. nor I.C.C. regulations make a lessee's coverage primary as a matter of law does not, in and of itself, resolve the threshold issue of whether the regulations effectively bring Driggers within the definition of an insured in the Transport Indemnity policy. An examination of the language of those regulations, read in conjunction with the public policy considerations outlined above, convinces me that Driggers is not an insured under the Transport Indemnity policy.

The provisions of law requiring that a carrier obtain and file proof of liability insurance include P.S.C. Rule 103–170, 49 U.S.C. Sec. 315, and 49 C.F.R. Sec. 1043.1. All of these are couched in substantially similar terms and require insurance "conditioned to pay any final judgment recovered against such motor carrier." (Quoted portion is from 49 C.F.R. Sec. 1043.1(a)).

Nowhere is there any requirement that the driver, or the owner for that matter, be an insured within the policy, only that if a judgment is recovered against the I.C.C. certificated carrier that there will be funds available to pay it. It is true that the driver will be deemed to be a statutory employee of the I.C.C. carrier and that the carrier may be held liable for the driver's negligence under settled principles of respondeat superior. *Mellon National Bank & Trust Company v. Sophie Lines, Inc.,* 289 F.2d 473 (3rd Cir. 1961); *Brabham v. Southern Asphalt Haulers, Inc.,* 223 S.C. 421, 76 S.E.2d 301 (1953). Such a rule, however, does not require that the driver, or his employer in fact, the owner/lessor, be insured as to their personal liability. This view is entirely consistent with public policy considerations. Had a judgment been recovered against Refrigerated Transport, the motor carrier referred to in 49 C.F.R. Sec. 1043.1(a), there is no doubt that Transport Indemnity could not have avoided liability. But that is not the case here. In fact, the I.C.C. carrier in this case was not even named a Defendant in any of the litigation following the accident.

In resolving the issue as to whether "any provision of law" requires that Driggers be brought within the definition of an insured in the Transport Indemnity policy, I have found the reasoning set forth in *Transport Indemnity v. Teter,* 575 S.W.2d 780 (Mo. 1978) to be most persuasive. The issue there was virtually identical to that here, i.e., whether the insurer for the I.C.C. certificated carrier/lessee owed coverage and a duty to defend the driver, an employee of the owner/lessor. There, as here, the driver, but not the I.C.C. carrier, was the Defendant against whom claims were asserted. In that case, the driver argued that the combined effect of the I.C.C. Regulations as to control and responsibility and financial responsibility was to make him an insured within the policy.

In rejecting that argument, the Court pointed to the language of the endorsement as to the insurer's agreeing to pay "any

final judgment recovered against the insured" and noted that "insured", within the meaning of that endorsement referred to the certificated carrier. 575 S.W.2d at 785. Such a result does not detract from the goal of protecting the public because "that purpose is fully served by a policy of insurance which insures the *carrier* against claims of negligent injury or death from its motor vehicle operations. (Citation omitted). The coverage of the driver is extraneous to this essential purpose." 575 S.W.2d at 786 (Emphasis in original). This view is in line with that adopted in *Kansas City Fire and Marine Insurance Co. v. Hartford Insurance Group*, 368 N.Y.S.2d 791, 82 Misc.2d 109, a case which is similar in principle but involving New York Public Service Commission regulations. There, the Court held that the P.S.C. endorsement to the lessee's policy provided coverage for any liability of the lessee, but did not require that the lessee's insurer provide a defense and coverage to the owner/lessor of the vehicle, or to the driver, an employee of the lessor.

In conclusion, with respect to the "any provision of law" definition of an insured employed in the Transport Indemnity policy, I find as a matter of law that the pertinent provisions of law direct only that the I.C.C. certificated carrier answer to the public, not to owner/lessors, or to their employees, or their insurance carrier. Since there is no other policy provision that would extend coverage to Driggers, I find as a matter of law that Transport Indemnity has no coverage for the accident in question.

I further find, as a matter of law, that in order to avoid circuity of action, Carolina Casualty's policy should be held to be primary. It is apparent that if Refrigerated Transport, the insured of Transport Indemnity, had to pay these damages, which were incurred solely because of the acts or omissions of Mr. Driggers, then it would be entitled to indemnity from Mr. Driggers. It is undisputed that one held derivatively liable has a right of action over against his employee, where the one derivatively liable has been made liable to a third

party by reason of the employee's negligence. *Jenkins v. Southern Railway Company*, 130 S.C. 180, 125 S.E. 912; 73 Am. Jur.2d, Subrogation, Sec. 39, Page 623.

Transport's right of indemnity against Driggers would necessarily include a right against Carolina Casualty. The general rule is that Carolina Casualty is liable to protect its insured, Driggers, from any loss by reason of his obligation to indemnify a co-tortfeasor. See, generally, Annotation, 4 A.L.R. 3rd 620.

In other words, if Refrigerated Transport should be found liable, it would have the right to proceed by indemnification against Driggers. As Refrigerated's subrogee, Transport could then sue Driggers, a permissive user under Carolina Casualty's policy, ultimately recovering against Carolina. As stated above, to avoid circuity of action, I hold that Carolina Casualty's policy is primary. Now, therefore, it is

ORDERED, ADJUDGED AND DECREED that the Defendant shall have judgment against the Plaintiff in the amount of Four Thousand One Hundred Eighty-Eight and 98/100 ($4,188.98) Dollars, representing the amount paid by Defendant in settlement of various claims plus its adjustment expenses; and it is

FURTHER, ORDERED, ADJUDGED AND DECREED that the Defendant shall have judgment against the Plaintiff for its costs and disbursements in this action; and it is

FURTHER, ORDERED, ADJUDGED AND DECREED that the claim of the Plaintiff be dismissed.

AND IT IS SO ORDERED.