**Burnell GASKIN, Jr., et al., Plaintiffs,**

**v.**

**Hiram JOWERS, et al., Defendants.**

**CHICAGO INSURANCE COMPANY,
Defendant-Appellant,**

**v.**

**TRANSPORT INDEMNITY COMPANY,
et al., Defendants-Appellees.**

No. 85–3041.

United States Court of Appeals,
Fifth Circuit.

Nov. 1, 1985.

Rehearing and Rehearing En Banc
Denied Dec. 4, 1985.

Hammett, Leake & Hammett, Kevin O'Bryon, New Orleans, La., for defendant-appellant.

Hulse, Nelson & Wanek, Randall L. Kleinman, New Orleans, La., for defendants-appellees.

Before GARZA, TATE, and JOHNSON, Circuit Judges.

## OPINION

JOHNSON, Circuit Judge:

On cross motions for summary judgment, Chicago Insurance Company (Chicago) and Transport Indemnity Company (Transport) sought to have the district court determine which of the two insurance companies was primarily liable for an accident occurring in St. Charles Parish, Louisiana, involving a tractor-trailer combination driven by Chicago's insured (Ed Jowers Trucking Co.) which was leased to Transport's insured (Monroe Warehouse Co.). The district court granted summary judg-

ment in favor of Transport, holding Chicago primarily liable. Chicago appeals, asserting on appeal that the driver of the vehicle was an insured under both policies and therefore, that the insurance companies should be treated as co-primary insurers. This Court agrees. The judgment of the district court is reversed and the case remanded for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

On October 28, 1983, the plaintiff, Burnell Gaskin, Jr., was a passenger in a vehicle which was struck from the rear by a 1978 Peterbilt truck driven by Hiram Jowers. The truck (a tractor-trailer combination) was owned by Ed Jowers Trucking Company. Hiram Jowers is the sole owner of Ed Jowers Trucking Company. Ed Jowers Trucking Company leased the tractor-trailer combination pursuant to ICC regulations to Monroe Warehouse Company, the holder of an ICC Certificate. At the time of the accident, the tractor-trailer combination was identified by placards bearing Monroe Warehouse's ICC permit number. Chicago insured the tractor owned by Ed Jowers Trucking Company, while Transport insured Monroe Warehouse Company under a comprehensive occupational liability policy.

Burnell Gaskin and his wife Annette Gaskin sued in Louisiana state court seeking damages for personal injuries allegedly sustained in the accident. The case was removed to federal district court.[1] Chicago and Transport brought cross motions for summary judgment on the issue of primary coverage. Chicago contended that Chicago and Transport were both primary insurers of Hiram Jowers, the driver of the truck.[2] Transport, on the other hand, argued that its insurance provided excess coverage only.

---

1. The case was removed to federal district court by the United States, the employer of another individual involved in the accident, who had been made a third party defendant.

2. It appears that the Gaskins' claims have not been adjudicated. Therefore, this Court must assume that the parties assume for purposes of this appeal that Hiram Jowers, the driver of the truck, was negligent.

**623**

Because the district court found that Hiram Jowers was not an insured under Transport's policy, the district court held that Chicago's policy provided primary coverage for the accident. Nevertheless, because of the public policy behind the applicable ICC regulations, the district court held that Transport would be liable for any liability exceeding Chicago's coverage. The district court entered final judgment on this claim, Fed.R.Civ.P. 54(b), and Chicago appeals. For the reasons stated below, the judgment of the district court is reversed, and this case is remanded for further proceedings.

## II. DISCUSSION

The primary issue on appeal is whether Hiram Jowers, the driver of the truck, was an insured under one or both of the insurance policies. In support of the district court's judgment, Transport relies on this Court's jurisprudence holding that a lessee's policy does not necessarily provide primary coverage as a matter of law solely because of the applicable ICC regulations.[3]

In *Carolina Casualty Insurance Co. v. Underwriters Insurance Co.,* 569 F.2d 304 (5th Cir.1978), this Court stated:

Therefore, assuming without deciding that the Underwriters [lessee's insurer's]

policy contains an ICC endorsement, we hold that the endorsement does not make Underwriters [the lessee's insurer] the primary insurer as a matter of law. Williamson [the driver] was a paid employee of JRJ [the lessor] at the time of the accident, and the leasing agreement granted Williamson permissive use of JRJ's equipment. Carolina [the lessor's insurer] insured the risk that a JRJ permissive user might incur liability. Carolina cannot disavow its primary insurer status on the theory that public policy demands that this be pushed off onto Underwriters. ICC policy factors are frequently determinative where protection of a member of the public or a shipper is at stake, but those factors cannot be invoked by another insurance company which has contracted to insure a specific risk and which needs no equivalent protection.

569 F.2d at 313 (footnotes omitted). Thus, Transport, in the instant case, is not the primary insurer as a matter of law.

Nevertheless, our inquiry does not end here. The determination that the ICC regulations do not make the Transport policy primary as a matter of law does not resolve the issue of whether the driver (Hiram Jowers) is an insured under the Transport policy.[4]

---

**3.** The regulations primarily at issue here provide that the ICC carrier-lessee (Monroe Warehouse Co.) shall have exclusive control over the equipment and shall assume complete responsibility for the operation of the equipment during the duration of the lease. 49 C.F.R. § 1057.12(d)(1). Moreover, the regulations provide that the carrier-lessee (Monroe Warehouse Co.) must maintain insurance coverage for the protection of the public. 49 C.F.R. § 1057.12(k). Provisions to this effect are to be contained in the written lease agreement between the lessee (Monroe Warehouse Co.) and the lessor (Ed Jowers Trucking Co.). 49 C.F.R. § 1057.12.

**4.** Holding the lessee's (Monroe Warehouse Co.'s) insurance policy primary as a matter of law would arguably entail holding the lessee liable for the lessor's negligence as well, at least as an initial matter. That approach was rejected in *Carolina Casualty v. Underwriters.* Nevertheless, the lessee's policy could name the lessor as an insured. It is important to emphasize that whether the lessor is an insured under the lessee's insurance contract presents a different

question than the question of whether the driver is an insured under the lessee's contract. That distinction is important, as the facts emphasize in *Carolina Casualty Insurance Co. v. Insurance Company of North America,* 595 F.2d 128 (3d Cir.1979). In that case, the jury found that the driver of the truck was not negligent, although it found that both the lessor and lessee were actively negligent.

In an attempt to avoid the holding of *Paxton,* discussed *infra,* Transport focuses on Hiram Jowers' status as a lessor, because Hiram Jowers is the sole owner of Ed Jowers Trucking Company, and argues that Transport's policy does not provide that the lessor is an insured under the policy. This Court need not determine whether the lessor is an insured under the Transport policy because the plaintiff Gaskin alleges only that Hiram Jowers, as driver, was negligent. This Court points this out to highlight that it is Hiram Jowers' status as driver that leads this Court to the conclusion that Hiram Jowers is an insured under Transport's policy.

This Court's analysis of Hiram Jowers' status does not begin with a clean slate. Rather, the disposition of this case is controlled by two prior Fifth Circuit cases. *See Carolina Casualty Insurance Co. v. Underwriters Insurance Co.,* 569 F.2d 304 (5th Cir.1978); *Transport Indemnity Co. v. Paxton National Insurance Co.,* 657 F.2d 657 (5th Cir.1981) (per curiam), *cert. denied,* 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 692 (1982). In both *Carolina Casualty v. Underwriters* and *Paxton,* this Court held that the driver of the leased vehicle was an "insured" under the lessee's insurance policy. The instant case is not distinguishable from *Paxton.*

In *Carolina Casualty v. Underwriters,* the lessee's insurance policy contained a permissive user clause. The permissive user clause, or omnibus clause, coupled with existing ICC regulations led this Court to conclude that the driver of the truck was an "insured" under the lessee's policy. This Court specifically adopted the reasoning of the district court on this point. 569 F.2d at 313. The district court stated:

> The United States Court of Appeals for the Fifth Circuit in *Simmons v. King,* 478 F.2d 857 (5th Cir.1973), held that an ICC certificated carrier, as is [the lessee], must assume liability for the actions and negligence of a driver operating a vehicle under its certificate of authority. That obligation is imposed by 49 C.F.R. § 1057.4 which mandates the inclusion of certain provisions in the lease agreement and creates a statutory employment relationship between driver and carrier. The required lease provision which is contained in the lease agreement in question recites that for the duration of the lease the leased equipment is "in the exclusive possession, control and use of the lessee ..." Consequently, Williamson's [the driver's] admittedly authorized use of the vehicle in question must, of necessity, have been with the permission of [the lessee] and the Under-

writers [the lessee's insurer's] policy, by its terms, covers [the driver].

569 F.2d at 309 n. 12.

In *Paxton,* this Court also held that the driver of the truck was an insured under the lessee's insurance policy. In *Paxton,* Transport argued that the contractual omnibus clause in *Carolina Casualty v. Underwriters* provided the only basis for primary liability on the lessee's part. This court held:

> Under its ICC endorsement Transport [the lessee's insurer] contracted to insure Chem Haulers [the lessee] for any negligence of a driver operating a vehicle under Chem Haulers' Certificate of Authority. Further, the Transport policy provides coverage "to any person who would not otherwise be covered under the underlying policy except by virtue of the application of the provisions of a motor vehicle financial responsibility law or other similar law." Transport argues that absent an omnibus clause it can only be vicariously liable, and therefore has a right of indemnity against Weibley [the driver], who in turn may proceed against Watts [the lessor] and ultimately against Paxton [the lessor's insurer]. On this premise, Transport urges that holding its coverage to be excess avoids circuity of action. *Our finding that Weibley [the driver] is an insured under Transport's contract collapses this theory,* as an insurer may not be subrogated against its insured. *Carolina [Casualty v. Underwriters],* 569 F.2d at 314. Transport's attempt to distinguish *Carolina* is unpersuasive.

657 F.2d at 660 (emphasis added).

Transport makes essentially the same arguments to this Court in the instant case, and Transport's attempt to distinguish *Carolina Casualty v. Underwriters* and *Paxton* are equally unpersuasive here. This court notes first that the operative ICC regulations applicable in the instant case are virtually identical to those regulations applicable in *Paxton* and *Carolina Casualty v. Underwriters.*[5] Thus, if a dif-

---

5. 49 C.F.R. § 1043.1(a) provides in pertinent part:

(1) No common or contract carrier subject to [these regulations] ... shall engage in inter-

ferent result in this case is commanded, it must be by virtue of the language of the Transport policy. But this Court finds no material difference in the policy language in the instant case that distinguishes this case from *Paxton.*

Transport asserts that the policy language found controlling in *Paxton* was actually an omnibus clause. Brief of Appellee at 6. Transport contrasts that language with the language in the instant policy and argues that the language in the instant policy is materially narrower. Therefore, Transport argues that the instant policy does not confer insured status upon Hiram Jowers. This Court disagrees.

■ The policy in the instant case provides:

The word "INSURED" shall mean the NAMED INSURED and *any other person,* firm, or organization *to whom insurance protection has been extended* under the policy or made so *by any provision of law.*

Record Vol. 1 at 104 (emphasis added). The language in the policy in the *Paxton* case provided coverage

*"[T]o any person who would not otherwise be covered* under the underlying policy *except by virtue of the application of the provisions of a motor vehicle financial responsibility law or other similar law."*

657 F.2d at 660 (emphasis added). These provisions do not differ in any material way, and this Court finds that the instant policy falls squarely within the holding of the *Paxton* case. Consequently, this Court holds that Hiram Jowers, as driver of the vehicle, was an insured under the terms of the Transport policy.

Other circuits have taken different approaches to the issue presented here. For example, the Tenth Circuit arguably interprets the lessee's coverage to be primary as a matter of law; the lessor's insurance provides excess coverage as a result of that Circuit's construction of the ICC regulations. *See, e.g., Hagans v. Glens Falls Insurance Co.,* 465 F.2d 1249 (10th Cir. 1972); *Argonaut Insurance Co. v. National Indemnity Co.,* 435 F.2d 718 (10th Cir. 1971). On the other hand, the Fourth Circuit has held that the lessee's coverage is excess and the lessor's coverage is primary. *See Carolina Casualty Insurance Co. v. Transport Indemnity Co.,* 533 F.Supp. 22 (D.S.C.1981), *aff'd by unpublished opinion,* 676 F.2d 690 (4th Cir.1982), *cert. denied,* 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982).

Transport asserts that this Court should adopt the analysis of the South Carolina district court in the *Carolina Casualty v. Transport* case. In that case, the district court held that under policy language essentially identical to the language involved in the instant case, the driver of the truck was not an insured under Transport's policy. The district court reasoned that the purpose of the ICC regulations is to protect the public and not to define the relationship between insurance companies. Therefore, under that analysis, the lessee is liable only in the event that the injured member of the

---

state or foreign commerce, and no certificate or permit shall be issued to such a carrier or remain in force unless and until there shall have been filed with and accepted by the Commission ... certificates of insurance ... conditioned to pay any final judgment recovered against such motor carrier for bodily injuries ... resulting from the negligent operation, maintenance or use of motor vehicles in transportation subject to [these regulations]....

This regulation is promulgated pursuant to 49 U.S.C. § 10927.

49 C.F.R. § 1057.12 mandates certain written provisions in the lease between the carrier-lessee and the lessor:

(d) *Exclusive possession and responsibilities* —(1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

\* \* \* \* \* \*

(k) *Insurance*—(1) The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to Commission regulations under 49 U.S.C. 10927...,

public is unable to receive satisfaction from other sources. The district court in the instant case largely followed that analysis.

No matter how appealing this argument may be, this Court's decision in *Paxton*, interpreting very similar language, cannot be ignored. This Court finds that *Paxton* controls the disposition of the instant case. Under that decision, Hiram Jowers, as driver of the vehicle, is an insured under the Transport policy issued to Monroe Warehouse Company.

Given that Hiram Jowers is an insured under the Transport policy, this Court must next determine which of the two policies affords primary coverage. In the instant case, both Chicago's and Transport's policies contain excess insurance clauses as well as apportionment clauses. In *Carolina Casualty v. Underwriters*, this Court applied Georgia law to determine the effect of the excess insurance clauses at issue there because the lease agreement provided that Georgia law governed. In *Paxton*, Mississippi law was applied to determine the issue of primary coverage. In the instant case, Chicago asserts and Transport does not dispute that Louisiana law governs this issue. Louisiana reconciles mutually repugnant "other insurance" clauses by apportioning liability among the insurers. *Graves v. Traders & General Insurance Co.*, 252 La. 709, 214 So.2d 116 (1968).

Transport's policy provides:

**H. OTHER INSURANCE**

(1) EXCESS INSURANCE

If at the time of an OCCURRENCE to which this insurance applies there is any other valid and collectible insurance, ... then the insurance provided by this policy with respect to that OCCURRENCE shall be excess of any such other insurance....

(2) CONTRIBUTION BY EQUAL SHARES

If other valid and collectible insurance applicable to the same OCCURRENCE provides for contribution by equal shares or stipulates that it shall be excess of any other valid

and collectible insurance ... then the insurance provided by this policy shall contribute by equal shares.

The contribution made by this Company shall not be for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid. With respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

Record Vol. 1 at the reverse of page 106.

Chicago's policy provides:

**B. OTHER INSURANCE—PRIMARY AND EXCESS INSURANCE PROVISIONS.**

1. This policy's liability coverage is primary for any covered auto while hired or borrowed by you and used exclusively in your business and over a route or territory, if any, you are authorized to serve by public authority. This policy's liability coverage is excess over any other collectible insurance for any covered auto while hired or borrowed from you by another trucker....

\* \* \* \* \* \*

4. When two or more policies cover on the same basis either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis.

Record Vol. 1 at 93, 92.

 According to *Graves*, this Court's first task is to determine whether the excess insurance provisions are mutually repugnant. We conclude that they are. Under *Graves*, mutually repugnant excess insurance clauses are ineffective. 214 So.2d at 118. The next inquiry is whether the

apportionment clauses are incompatible. *Graves* did not reach the question of what result would obtain if the apportionment clauses also were incompatible, because the clauses were not incompatible in that case. Our cursory review of Chicago's apportionment clause indicates that liability is to be apportioned based on the proportion that Chicago's policy limit bears to the total limit available under both Chicago's and Transport's policies. On the other hand, Transport's policy appears to require equal division of liability until one or the other policy limit is exhausted. Our initial view is that these apportionment clauses are also incompatible, and they both cannot be given effect.

■ Because the issue of how Louisiana would apportion liability under these facts has not been briefed to this Court, this Court declines to speculate on the proper allocation. On remand, the district court is to entertain arguments and briefing on this issue, and to take any evidence necessary to initially determine this issue. As stated by the Third Circuit in an analogous situation:

> Under these circumstances, in this diversity case, this court will not indulge in the pre-*Erie* fallacy of looking to some "brooding omnipresence in the sky" for a general law governing the interpretation of these insurance contracts. Nor should we risk adding yet another inconsistent judicial interpretation of the terms of art on which insurers rely, by plunging into a detailed exegesis of these contracts with only schematic indications of the parties' own understanding thereof.

*Carolina Casualty Insurance Co. v. Insurance Company of North America,* 595 F.2d 128, 143 (3d Cir.1979) (citations omitted). Here, as there, this Court remands this case to the district court so that the district court may initially determine the facts and law applicable to the analysis of these contracts and to construe the above referenced provisions in light of Louisiana law to determine what duties the parties to this action undertook by contract.

## III. CONCLUSION

This Court holds that Hiram Jowers, in his capacity as driver of the truck, is an insured under Transport's policy issued to Monroe Warehouse Company. Consequently, both Chicago's and Transport's policies cover Jowers' negligence. Under Louisiana law, the excess coverage clauses of both policies are mutually repugnant; therefore, they are ineffective. Nevertheless, the apportionment clauses of the policies also appear to be irreconcilable. Therefore, the judgment of the district court, insofar as it held that Hiram Jowers was not an insured under the Transport policy, is reversed. The case is remanded so that the district court may first consider the effect of the apportionment clauses on the distribution of liability in this case. The judgment of the district court is

REVERSED and REMANDED.