Marcel BRUNET, Jr.

v.

The AMERICAN INSURANCE CO. and State Farm Mutual Automobile Insurance Co.

Civ. A. No. 86–274.

United States District Court, D. Vermont.

May 20, 1987.

Thomas Z. Carlson, Langrock, Sperry, Parker & Wool, Burlington, Vt., for plaintiff.

Robert H. Erdmann, Dinse, Erdmann & Clapp, Burlington, Vt., for defendant American Ins. Co.

James W. Coffrin, Pierson, Affolter & Wadhams, Burlington, Vt., for defendant State Farm Mut. Auto. Ins. Co.

## OPINION AND ORDER

BILLINGS, District Judge.

On March 24, 1987, plaintiff filed with the Court a motion for summary judgment on several issues. Both defendants opposed the motion and moved for summary judgment on the same issues themselves. The Court heard oral argument on April 23, 1987.

### Background

On January 17 1984, plaintiff Marcel Brunet, Jr. was seriously injured in an automobile accident in New Hampshire while on a work assignment for his employer, Brunet Construction, Inc. The ownership of the automobile is apparently still in dispute (either Loren Brunet or Brunet Construction owned the car—for the purposes of this motion actual ownership is irrelevant), but it was insured by a business automobile policy from The American Insurance Company (American). That policy had limits of $300,000 for liability and $40,000 for uninsured motorist coverage.[1] Brunet also held two separate personal automobile policies from State Farm Mutual Automobile Insurance Co. (State Farm), each of which included uninsured motorist coverage of $100,000. The driver of the car that collided with Brunet, William Cronin, was insured by National Grange Mutual Insurance Company (National Grange) for liability up to $50,000.

National Grange, Cronin's insurer, has offered to settle with plaintiff for the limits of its policy in exchange for a full release of itself and its insured from all liability. Cronin has furnished an affidavit that he

has no additional assets of value. Plaintiff wishes to accept the settlement, and State Farm has consented, but American refuses to give its consent because it wishes to preserve its subrogation rights against Cronin individually. Further, plaintiff has made formal demands on both American and State Farm for payment under their uninsured motorist (UM) coverages, but neither will agree to pay yet. As a result, in an attempt to define the responsibilities of each company, plaintiff seeks declaratory judgment on five legal issues. Defendants argue that they are entitled to judgment on these same five issues. We shall discuss and determine each issue in turn.

## DISCUSSION

1. Must American consent to settlement with Cronin and National Grange?

American's insurance policy contains a clause that "[t]he insurance does not apply to: 1. Any claim settled without our consent." Plaintiff's Motion for Summary Judgment, Exhibit B, Part VI(C)(1). After receiving an offer from Cronin's insurance company, National Grange, to settle for the full amount of its policy and an affidavit by Cronin that he is unemployed and has no assets other than a 1980 automobile, plaintiff contacted American for their consent to accept the settlement. American refused to consent, stating that it wished to preserve its subrogation rights, and suggested several alternative courses of action. American does not assert, however, that Cronin has any assets beyond the insurance policy to which its subrogation rights would be valuable.

The relationship between an insurer and its insured is a "mutually fiduciary" one; each party owes the other "the duty of utmost good faith in their dealings together." *Johnson v. Hardware Mut. Casualty Co.*, 109 Vt. 481, 490, 1 A.2d 817 (1938). The Vermont Supreme Court has defined bad faith by an insurer as "the intentional

---

1. Uninsured motorist coverage includes coverage of *under* insured motorists. "Underinsured" is defined in 23 V.S.A. § 941(f).

disregard of the financial interest of the [insured] in the hope of escaping the full responsibility imposed upon it by its policy." *Id.* at 491, 1 A.2d 817. This good faith standard was developed in a slightly different context than we have before us now. *Johnson* involved an insured-defendant in a personal injury case who, because of the insurer's refusal to settle, was found personally liable for an amount far in excess of the limits of the policy. However, the standard applies equally to all relations between an insurer and insured, no matter what the legal context or the amount involved. Therefore, we find that defendant American owes plaintiff a duty of good faith in considering Cronin's proposed settlement.

■ Good faith in this context means that American must consent to the settlement if the settlement is within the best interests of both insurer and insured. In this case, the alleged tortfeasor's insurer has offered to settle with plaintiff for $50,000, the full limit of its policy. The alleged tortfeasor himself, Cronin, has sworn that he has no assets. Therefore, the settlement offer appears to provide plaintiff with the full amount of recovery he can actually expect from the alleged tortfeasor. American has presented no evidence in the form of affidavits or otherwise that Cronin has or will have any additional assets from which further damages could be recovered; because Cronin has no assets beyond the $50,000 policy limits, American's subrogation rights are worthless. As its subrogation rights are of no value, American's refusal to consent cannot be in good faith. American has nothing to gain by refusing, while its insured has everything to lose. We find that under the circumstances presented here American has a duty as a matter of law to consent to plaintiff's settlement with and full release of Cronin and National Grange and its failure to do so constitutes bad faith as a matter of law.[2]

2. What is the applicable limit of American's UM coverage under 23 V.S.A. § 941(c)?

■ The Vermont Uninsured Motorist statute, 23 V.S.A. § 941, was amended as of July 1, 1983, to require that UM coverage "for new or renewed policies ... be identical to those provided in the policy selected by the person obtaining" it, but not less than certain statutory minimums. 23 V.S.A. § 941(c). The face amount of American's UM coverage is $40,000; the liability coverage is $300,000. Plaintiff claims that this amendment increases American's UM coverage to $300,000. American claims that the amendment does not apply to this policy. We agree with American.

The statute clearly states that the amendment applies to "new or renewed policies." This policy was issued on March 19, 1983, for one year. The bill went into effect on July 1, 1983, and the accident occurred on January 14, 1984. Thus, the policy was not a "new or renewed" policy at the time the statutory amendment was passed, nor had it become new or renewed at the time of the accident. The plain meaning of the statute is that it apply to only those policies that were actually new or renewed after the effective date of the statute. Had the legislature intended that all insurance policies immediately adopt the new standards it would have used less restrictive language such as "all policies".

Plaintiff cites a bulletin from the State Department of Banking and Insurance in support of its position. Plaintiff's Motion

---

**2.** The general rule is that "[t]he insured's breach of the consent requirement is an affirmative defense which must be raised by the insurer, and it has been held that an insurer cannot rely upon the clause without claiming prejudice resulting from its violation by the insured." 7 Am.Jur.2d § 332 at 1036. Rather than requiring plaintiff to breach the consent clause, to await American's refusal to pay, and then to bring suit against American for benefits due, we are in essence determining now by means of a declaratory judgment that American has failed to demonstrate any prejudice to its rights. In a similar case, a Florida appellate court found that an insurer's subrogation rights were in no way prejudiced when the settling tortfeasor had no assets beyond the amount of settlement and therefore the insurer could not rely on a consent clause to refuse payment. *Galinko v. Aetna Casualty & Sur. Co.,* 432 So.2d 179 (Fla.App. 1983). We find the same situation here.

for Summary Judgment, Exhibit J. The bulletin does indicate that the Department considered the statute to apply to *all* insurance policies, but it does not provide any rationale for the Department's reading of the statute. Because it appears to violate the plain meaning of the statute, we do not find the Department's bulletin persuasive.

In conclusion, we find that the July 1983 amendments do not apply to the policy in force at the time of this accident. Therefore, the applicable limit of American's UM coverage is the face amount of $40,000.

3. Is State Farm's "anti-stacking" or "excess-escape other insurance" clause on its UM coverage valid?

The insurance policies issued by State Farm include a clause that provides:

3. If the insured sustains bodily injury while occupying a vehicle not owned by you, your spouse or any relative, this coverage applies:

a. as excess to any uninsured motor vehicle coverage which applies to the vehicle as primary coverage, but

b. only in the amount by which it exceeds the primary coverage.

If coverage under more than one policy applies as excess:

a. the total limit of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as excess, and

b. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all uninsured motor vehicle coverage applicable as excess to the accident.

Plaintiff's Motion for Summary Judgment, Exhibit A, at 9. State Farm maintains that the clause reduces its responsibility for payment from the face amount of $100,000 UM coverage per policy to $30,000 per policy. State Farm asserts that American's coverage is the "primary" coverage and

thus State Farm's policies provide only excess coverage. As excess coverage, State Farm claims it is liable only in the amount its coverage exceeds American's primary coverage—in this case American's coverage, if it is primary, provides $40,000 coverage, and thus under State Farm's interpretation State Farm's liability would be limited to $60,000. Further, State Farm claims because its two policies both apply as excess, the second part of the provision quoted above comes into play, and its *total* liability is only $60,000, which is divided equally between the two policies.

Plaintiff alleges that this provision is invalid under Vermont law after *Goodrich v. Lumbermens Mut. Casualty Co.*, 423 F.Supp. 838 (D.Vt.1976). The *Goodrich* court held that an "other insurance" clause similar to State Farm's was invalid because it violated 23 V.S.A. § 941. The court found that the statute required "every policy" to have a minimum UM coverage, rather than requiring every injury to be covered to a minimum level. We see no reason to overturn this holding. The statute contemplates minimum requirements per *policy*. There is no evidence that the legislature intended to permit an individual policy to avoid the minimum statutory requirements by comparing its coverage with other insurance coverage an insured might have. The insured has paid the premium to receive a certain amount of UM coverage, and that premium has not necessarily been adjusted to account for any other insurance the insured may have; therefore, the insured should receive the full benefit of the coverage paid for.

As to the "excess-escape" portion of this clause, the same rationale would seem to apply. State Farm cannot reduce its statutorily required minimum coverage merely because it deems its coverage "excess" rather than "primary". In this case American disputes the designation of its coverage as "primary" anyway, so there may be no need for the primary/excess distinction.[3] As plaintiff has asked for a

---

**3.** If there is no primary coverage and both American's and State Farm's UM coverages provide excess protection, the majority rule is to

disregard both "other insurance" clauses and prorate the liability equally between the two policies. *See Hennes Erecting Co. v. National*

declaratory judgment on the issue at this time, however, we do find the "excess-escape" clause invalid as well.

■ The final paragraph of this provision appears valid. If plaintiff's total damages are less than the total UM coverage applicable to the accident, each policy is responsible only for a pro rata share of that total. In sum, we find that the "anti-stacking" and "excess-escape" clauses in the State Farm policies violate the minimum statutory requirements for UM coverage set out in 23 V.S.A. § 941(c). State Farm is liable up to the full face amount of its UM coverage on *each* policy, although plaintiff's total damages will be apportioned among all applicable UM policies.

4. May defendants set off from their UM coverage any amount obtained from National Grange and Cronin?

Plaintiff argues that defendants are liable to the full extent of their UM coverage (assuming without deciding at this time that plaintiff's damages equal or exceed the total of all insurance policies) regardless of any payments received from the alleged tortfeasor or his insurance company.[4] Defendants assert that under 23 V.S.A. § 941(e) and (f) they are entitled to reduce their coverage by the amount of recovery from any tortfeasor.

■ The statute defines an underinsured motor vehicle as one whose "personal injury limits of liability at the time of an accident are less than the limits of uninsured motorist coverage applicable to any injured party legally entitled to recover damages under said uninsured motorist coverage." 23 V.S.A. § 941(f). Here, the limits of uninsured motorist coverage applicable to the injured party are $240,000;[5] the liability limits are $50,000. Thus, the alleged tortfeasor, Cronin, is underinsured by $190,000. By this definition alone it is obvious that defendants may set off the actual payments by the tortfeasor from their coverage. He is only underinsured to the extent that his liability insurance does not equal plaintiff's full UM coverage. The definition makes clear that *under* insurance protection only applies to the amount by which the tortfeasor actually is *under* insured. It does not apply to the amount by which his coverage differs from plaintiff's total damages or from plaintiff's other insurance coverages. Therefore, his payments must be subtracted from the total of all UM policies, and the remaining UM liability is apportioned pro rata among the policies.

Further, were we to permit plaintiff to recover both from Cronin and from all three full UM policies, we would be placing individuals injured by *under* insured motorists in a better position than those injured by either uninsured or fully insured motorists. For example, let us assume A is hit by B. A has UM coverage of $100,000; B has liability coverage of $50,000. Were we to adopt plaintiff's proposal, A would recover $150,000—$100,000 from her UM coverage, plus $50,000 from B. If, however, we permitted offset, A would only recover $100,000—$50,000 from B and $50,000 from the UM. If A had UM coverage of $100,000 and B had liability coverage of $100,000, B would be fully insured, and A would recover $100,000—all from B and none from the UM. Finally, if A had $100,000 UM coverage and B had no coverage, B

*Union Fire Ins. Co.,* 813 F.2d 1074 (10th Cir. 1987); *Port of Portland v. Water Quality Ins. Syndicate,* 796 F.2d 1188, 1192–93 (9th Cir. 1986); *Gaskin v. Jowers,* 775 F.2d 621, 626 (5th Cir.1985); *Crowley's Milk Co. v. American Mut. Liab. Ins. Co.,* 426 F.2d 752 (2d Cir.1970).

4. Plaintiff apparently argues that even if payments by Cronin may be set off against UM coverage, payments by Cronin's insurer may not. He bases this argument on the language in 23 V.S.A. § 941(e) which permits the insurer to recover settlement proceeds from "any person legally responsible". Plaintiff apparently would

have us believe that only Cronin is a legally responsible person, and that payments from his insurer are not recoverable. As National Grange is involved in the accident only to the extent it is liable for Cronin's acts, this argument is without merit.

5. The parties do not seem to dispute that *all* policies applicable to the injured party are totalled to determine the amount of underinsurance. As they have not challenged this approach, we do not address the applicable law on the subject.

would be an uninsured motorist, and A would also recover $100,000—all from the UM this time.[6] The legislature clearly did not contemplate this inequitable result. Instead, 23 V.S.A. § 941 was designed to ensure the victim of an underinsured motorist a statutory minimum coverage equal to that of the victim of an uninsured motorist.

Plaintiff cites in support of his position a recent decision by this Court in *Mulliss v. American Protection Ins. Co.*, 653 F.Supp. 685 (D.Vt.1987) (Coffrin, J.) That decision rested upon an ambiguity in the language of the insurance contract provision. No such ambiguity exists here. Therefore, we find that defendants may set off any payments by Cronin and National Grange from the total UM coverage and apportion the remaining liability among the policies pro rata.

5.  May the UM coverages be reduced by the amount of worker's compensation paid?

■ State Farm asserts that any payments they make under their UM coverage should be reduced by any amount paid under plaintiff's worker's compensation insurance. State Farm admits, however, that the worker's compensation benefits should be deducted from plaintiff's *total* damages, not from the State Farm automobile policies' limits of liability. Plaintiff argues that State Farm may not reduce its coverage below the statutory minimum.

It is axiomatic that plaintiff may not receive double recovery for his injuries. If plaintiff were to collect both worker's compensation and UM benefits without comparing their total to plaintiff's total damages, plaintiff might receive compensation for the same injury twice. Together both the UM and worker's compensation payments may not add up to more than plaintiff's total damages. Although defendants' insurance policies apparently provide on their face that their actual payments will be reduced by any worker's compensation ben-

efits, regardless of whether the coverages are duplicative or not, they have not pursued that interpretation before this Court. As defendants have conceded that the worker's compensation benefits paid would be applied to plaintiff's total damages, we do not address the validity of the actual policy provisions themselves.

### ORDER

For the reasons and in the manner discussed above, plaintiff's motion for summary judgment is GRANTED in part and DENIED in part; defendants' motions for summary judgment are GRANTED in part and DENIED in part.

SO ORDERED.

---

**6.** This rationale has been followed by the Maine Supreme Judicial Court in *Connolly v. Royal*   *Globe Ins. Co.*, 455 A.2d 932 (Me.1983).